[L. A. No. 12754. In Bank.—February 28, 1933.]

In the Matter of the Estate of EDWIN C. LAYTON, Deceased.

Earle M. Daniels and Julius V. Patrosso for Appellants.

Henry G. Bodkin and Leonard Husar, as *Amici Curiae* on Behalf of Appellants.

Arthur W. Eckman, Melvin T. Dunlavy, Jerry H. Powell and Morton L. Barber for Respondents.

. Walter M. Campbell, as *Amicus Curiae* on Behalf of Respondents.

THE COURT.—After further consideration of this cause, we find ourselves in agreement with the opinion rendered

by the District Court of Appeal, Second District, Division Two, when this appeal was before that court. We, therefore, adopt said opinion as the opinion of this court. Said opinion as written by Fricke, Justice *pro tem.*, is as follows:

"Edwin C. Layton died in Los Angeles, leaving him surviving his wife, Alice B. Layton, a daughter, Marguerite Layton (also known as Marguerite Nolan), and a brother and two sisters, Ernest H. Layton, Grace Layton Laughlin and Maude Layton Clendenin, referred to in this opinion as the contestants. The deceased left a will nominating Security Trust and Savings Bank as executor. One appeal is by Alice B. Layton and First Church of Christ Scientist, both specifically made beneficiaries, and the other appeal is by the brother and sisters, who claim an interest in the estate under the will.

"After provisions immaterial here, including the bequest of all clothing, jewelry and personal belongings, the will provided that all of the remainder of the estate should go to the Security Trust and Savings Bank, in trust, to pay from the net income to Emerick Brown and Layton Brown the sum of $75 per month for a period of two years or until their prior death, and to pay the balance of the net income to the wife during her life or until her remarriage, with authority to use portions of the trust property for her necessary needs and comforts if the trustee should so determine. The will further provided that, upon the death or remarriage of the wife, the trust should terminate and the entire trust estate be distributed to the First Church of Christ Scientist in Boston, Massachusetts, with the following proviso 'Fourth: If for any reason the devise and bequest to the Christian Science Church, hereinabove mentioned, or any part thereof, shall be declared or held to be invalid or in excess of my testamentary power, then and in that event I hereby give, devise and bequeath such portion or portions thereof as may be declared or held to be invalid or in excess of my testamentary power in fee, to my then living heirs-at-law, excluding my daughter Marguerite Layton, also known as Marguerite Nolan, now residing in Indianapolis, Indiana, equally, share and share alike.' Another paragraph of the will of importance here provides: 'Fifth: I have intentionally omitted to provide for and specifically direct and will that under no circumstances shall any part,

share or interest in my estate go to, vest in or be taken by my daughter, Marguerite Layton . . . or any descendants of my said daughter, . . . and I hereby generally and specifically disinherit each and any and all persons whomsoever claiming to be or who may be lawfully determined to be my heirs at law, except as otherwise mentioned in this will, and if any of such persons or such heirs, or any devisees or legatees under this will, or their successors in interest, or any other person who if I died intestate would be entitled or shall lawfully become entitled to any part of my estate, shall either directly or indirectly, singly or in conjunction with other persons, seek to set aside this will, or attack, oppose or seek to set aside the probate of this will, or to impair, invalidate or set aside its provisions, . . . or shall consent to, acquiesce in or fail to contest such proceedings, . . . then and in any or all of the abovementioned cases and events I hereby give and bequeath to such person or persons the sum of One ($1.00) Dollar and no more, in lieu of any other share or interest in my estate. . . . '

''The will was admitted to probate on February 1, 1926, the court finding, among other things, that the decedent was a resident of Los Angeles county, and the Security Trust and Savings Bank duly qualified as executor. On April 26, 1926, Alice B. Layton, the wife, and the First Church of Christ Scientist filed a motion under section 473 of the Code of Civil Procedure to amend the decree admitting the will to probate and the certificate of proof of will and facts found, and on the hearing on May 10, 1926, the court, with the consent of the executor, granted such motion and amended the decree and certificate to have the same contain the finding that the deceased, at the time of his death, was a resident of the District of Columbia. While personal notice of the motion was served upon the heirs and legatees specifically named in the will, no notice thereof was given to Ernest H. Layton, Grace Layton Laughlin or Maude Layton Clendenin, the brother and sisters of deceased, other than that given by posting three notices as provided in the order fixing time for the hearing of the motion.

''On January 22, 1927, Marguerite Layton filed a contest and opposition to probate of the will. The executors and specifically named beneficiaries in the will were made respondents, and answered the petition. The above-named

brother and sisters of the deceased were not named or served, nor did either of them appear in this proceeding. No trial of the contest was ever had, it being dismissed October 15, 1928, by stipulation of the parties.

"The executor came into possession of personalty, the separate property of the deceased, of the value of ninety-eight odd thousand dollars, of which a portion valued at $16,322 was returned in the inventory and appraisement filed herein. Of the balance, some seventy-five to eighty odd thousand dollars in intangible property was turned over by the executor to Alice B. Layton, who was appointed administratrix with the will annexed in the District of Columbia and returned this amount in the proceedings there.

"The order of the trial court settling the account of the executor and distributing the estate determined: (1) that the contestants (the brother and sisters) were interested in the estate to the extent of any excess above that which the Christian Science Church could take and that distribution of the trust estate should be deferred until the determination of the question as to whether the Christian Science Church was entitled to more than one-third of the estate; and (2) that the contestants were not disinherited by reason of any failure to oppose the contest filed by Marguerite Layton. From these portions of the order the wife and Christian Science Church have appealed. The contestants appealed from all of the order except the portions last stated, but present here only the points that decedent was a resident of Los Angeles county and that the order amending the decree admitting the will to probate by a determination that decedent was a resident of the District of Columbia was void, and that, even though decedent was a resident of the District of Columbia, the executor was chargeable with the value of all or at least part of the property which was delivered to the administratrix with the will annexed.

"The question first presented is whether the contestants are interested in the estate. The wife and Christian Science Church contend that the contestants are without interest by virtue of the provisions of the fifth paragraph of the will previously quoted, whereby the testator disinherited 'all persons whomsoever claimed to be or who

may lawfully be determined to be my heirs at law, except as otherwise mentioned in this will'. Obviously the contestants fall within the general description of this clause and are disinherited unless 'otherwise mentioned' in the will, for, even conceding that they could not be included in the class of 'heirs at law', they were persons 'claiming to be . . . heirs at law'. In the reply brief of the wife and the Christian Science Church it is argued that the word 'mentioned' as used in the fifth paragraph of the will means 'named', and that since contestants were not 'named' they did not ·come within the exception. This contention wholly overlooks the fact that in *Estate of Kurtz*, 190 Cal. 146, the court (p. 149) [210 Pac. 959, 960] specifically held contrary to such a contention, saying: 'No reason is perceived why the wife could not be "mentioned" by any description which would include her. Certainly it would not be necessary to mention her by name, and to include her, as she was included, in the description of a class, "mentions" her as effectually as if she had been named therein.' This leaves the question, are the contestants 'mentioned' in the will by any description which would include them? The fourth paragraph of the will, heretofore quoted, provided that if any part of the bequest to the Christian Science Church shall be held invalid then such portion shall go 'to my then living heirs at law, excluding my daughter, Marguerite Layton . . . ' Whether the contestants are 'mentioned' in the will and have an interest in the estate depends upon whether or not they are included in the term 'then living heirs'. Section 1386 of the Civil Code, subdivision 1, provides that, where the decedent leaves a surviving wife and only one child, such wife and child will succeed to the estate in the absence of a ˙will. It is contended that, since the decedent here left a wife and only one child, they alone would constitute and be included in the class of 'then living heirs' and that, since the child is expressly disinherited by the will, the wife is the only person who could take under the conditional and contingent bequest to the 'then living heirs'. Ordinarily the word 'heirs' means the persons who would be entitled to the estate of one who died intestate (Civ. Code, sec. 1334; *Ginochio* v. *San Francisco*, 194 Cal. 159 [228 Pac. 428]; *Estate of Wilson*, ˙184 Cal. 63 [193 Pac. 581, 582]). How-

ever, as stated in the case last cited: 'The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible. (Civ. Code, secs. 1317, 1318.)' Had the testator intended that any illegal excess over the bequest to the church should go to his wife the simplest and most natural course would have been to so provide and the fact that he did not do so supports the theory that he did not so intend. In the fifth paragraph of the will (the disinheriting provision) the testator refers to persons 'who may be lawfully determined to be my heirs-at-law, except as otherwise mentioned in this will' further evidencing that he considered that there were persons other than his wife and the daughter, specifically disinherited, who came under the description of 'heirs at law', as that term was used and understood by him, a conclusion further reinforced by the exception clause, which instead of excepting only the wife, is general in its phraseology. The use of the adjective 'living' in the fourth paragraph of the will as defining the word 'heirs-at-law' and its omission when using the word 'heirs-at-law' in the fifth paragraph tends at least to indicate that, to the mind of the testator there was a difference between 'heirs-at-law' generally and 'then living heirs-at-law'. It may well be that the testator by the latter phrase intended to designate those who, when the bequest to the church should be declared invalid were 'then living'. It must also be borne in mind that the estate, under the will, is to remain in trust until the 'demise or remarriage' of the wife, in which event the entire estate is to be transferred to the church and that this provision is followed by the one providing that the invalid portion shall go to the 'then living heirs'. This would indicate the intent of the testator that the interest of the wife should terminate upon her death or remarriage and is opposed to the theory that the testator intended that the invalid portion of the bequest to the church should go to the wife.

 "The contestants base their claims upon the theory that, since the daughter is expressly excluded by the terms of the will, she is to be treated as nonexistent and that in accordance with the intent of the testator the rule of

intestate succession applicable to the case is that set forth in subdivision 2, section 1386, of the Civil Code, which provides that if a husband die without issue and without a father and mother living, his estate shall go half to the wife and half to his brothers and sisters. This principle seems to be sustained by the cases of *Minot* v. *Harris*, 132 Mass. 529, and *White* v. *Springett*, L. R. Ch. App. Cas., vol. 4, p. 300. Whichever theory is adopted, it seems to us that the testator did not intend that any invalid portion should go to his wife alone and that, in using the words 'then living heirs' he did so intending to designate thereby those persons, excluding his daughter, who should be alive at the time of the termination of the trust and who might at that time come within the term 'heirs'. The contestants, being the brother and sisters, were, therefore, interested parties to the probate of the estate and, being 'mentioned' by the provisions of the fourth paragraph of the will, are not included in the disinheriting provisions of the fifth paragraph thereof.

■ "The next point raised is that the contestants have forfeited their rights by failing to defend the contest brought by Marguerite Layton, and is based upon the fact that, while the executor and beneficiaries specifically named in the will filed an answer to the contest, the brother and sisters did not. It must be noted that the contestants here were not named as respondents in the contest and no citation was directed to or served upon either of them, nor have we been referred to any proof tending to show that they had knowledge of the contest in time to answer.

■ The notice of contestants to the executor requesting service upon them of copies of petition for sale of property, petition for conveyance of property and of accounts and petition for final distribution cannot be considered as establishing that they had notice or knowledge of a contest filed thereafter. Acquiescence in a will contest or a failure to oppose the same can exist only when a party so charged has knowledge of the contest and then impliedly consents or assents thereto or wilfully omits to oppose the same. Presumably Marguerite Layton, who instituted the contest, knew of the existence of her father's brother and sisters who, having been 'mentioned' in the will, were entitled to notice by citation of her contest (Code Civ. Proc., sec.

1328), and her failure to so notify them might of itself prove fatal to the contest since, before the court could try the issues of fact in the contest, proof would first have to be made that all known interested parties had been cited to appear. (Code Civ. Proc., sec. 1329.) Their rights and remedies arising from the fact that they were not cited would have been waived by an answer or other general appearance. The will does not say that the beneficiaries must 'answer' a contest, neither does it describe how a contest shall be opposed. Contestants may, so far as we are advised, have either had no knowledge or, if they had knowledge, relied on the failure of the contestant to cite all interested parties as a means of defeating the contest. In the absence of any showing of facts to the contrary it cannot be said that contestants did not oppose the will contest nor can it be said that they had knowledge of the contest and either acquiesced in or failed to defend the same. The finding of the trial court was fully justified. Furthermore, the contest was dismissed and we have no means of knowing that, had such dismissal not taken place, the contestants would not have successfully defeated this attack on the will.

■ ''Contestants urge that the court was without power to amend the order admitting the will to probate and the certificate of proof of will and facts found, by changing the finding that deceased was a resident of the county of Los Angeles, California, to a finding that he was a resident of the District of Columbia. The will declares that the testator is a resident of the District of Columbia and it does not seem to be contended that in fact the deceased was not a resident of the latter jurisdiction at the time of his death. The executor's petition for probate of the will set forth and the testimony of its agent as the applicant declared that the deceased was a resident of Los Angeles county but this was apparently due to a mistake of fact and the executor later filed a written consent to the amendments in question. The proof in support of the motion clearly showed that the deceased was a resident of the District of Columbia. The only question here is whether the court was authorized by section 473 of the Code of Civil Procedure to order the amendments. Some nice distinctions are drawn in the briefs as to whether the order here

attacked was one changing the finding as to the place of decedent's residence by amending the original order and certificate or by vacating the same and substituting a new order and certificate. Section 473 is not so narrow in its provisions as to lay down a specific exclusive form of order whereby a party may be relieved by reason of his mistake, inadvertence or excusable neglect. We see no reason why the method adopted by the trial court does not fall within the procedure contemplated by the section if the section is applicable to proceedings in probate such as we have here. The precise question does not appear to have been adjudicated in this state but it has been held that section 473 authorizes the court to relieve a party from an order or other proceeding in probate by reason of his mistake, inadvertence or excusable neglect. (*Levy* v. *Superior Court,* 139 Cal. 590 [73 Pac. 417] ; *Cahill* v. *Superior Court,* 145 Cal. 42 [78 Pac. 467] ; *De Pedrorena* v. *Superior Court,* 80 Cal. 144 [22 Pac. 71] ; *Estate of Hickey,* 129 Cal. 14 [61 Pac. 475] ; *Estate of Seaman,* 51 Cal. App. 409 [196 Pac. 928].) The case last cited recognizes that an order admitting a will to probate may be assailed by proceedings under section 473 and the entire trend of the decisions warrants our conclusion that the trial court had the power to make the order changing the finding as to the place of residence. The case of *Holabird* v. *Superior Court,* 101 Cal. App. 49 [281 Pac. 108, 109], cited by contestants was not one in which a proceeding was had under section 473 but was an application for a writ of mandate to compel the superior court to hear and determine a motion to set aside the order admitting the will to probate upon the ground that the court had no jurisdiction of the estate for the reason that the deceased was not a resident of the county and that the testimony, upon which the order was based, that she was a resident of the county, was untrue. The opinion lays down the rule that 'an order granting letters of administration is an adjudication of the fact of residence of the deceased in the county over which the court has jurisdiction and is binding upon the whole world, unless vacated or set aside on direct attack' and that the determination as to residence 'cannot be attacked collaterally'. The decision in effect declares that if the court erred in deciding the question of residence without sufficient

evidence, the remedy was by appeal only. While there the motion was based upon a claim of fraud and sought a redetermination of a disputed issue of fact, here no fraud is claimed and relief is sought by a motion under section 473. An order or judgment obtained by fraud is not an order or judgment had through mistake, inadvertence or excusable neglect. While the case of *Holabird* v. *Superior Court, supra,* holds that the order could not be attacked 'collaterally' it also holds that the order 'is binding upon the whole world unless vacated or set aside on direct attack'. ■ The proceeding under section 473 is a direct attack. (*People* v. *Norris,* 144 Cal. 422 [77 Pac. 998]; see, also, *Sharp* v. *Eagle Lake Lbr. Co.,* 60 Cal. App. 386, 391 [212 Pac. 933].) The cases cited wherein judicial error, which could have been reached by motion for a new trial or appeal, was sought to be corrected by motion to change findings or alter a judgment so as to overcome the error are not in point. In the case at bar the order in question was not assailable either by motion for a new trial or by an appeal and it seems that section 473 must have been intended to reach a situation such as we find here so that the determination of the trial court will not only be in accordance with the law but will also be based upon the facts as they actually exist. The trial court was acting with legal authority in granting the motion and correcting the order and certificate of facts found so that they truly declared the place of residence of the deceased.

■ ''Contestants raise the further point that the court had no power to make the order just referred to because they had no notice of the motion. Under and pursuant to the order of the trial court the notice was personally served upon and a copy of the order for the hearing mailed to all persons named in the will and three copies of the notice of hearing were posted in and about the courthouse. No notice or copy of the order was served upon contestants who here contend that the same notice should have been given as is required by law of the hearing of a petition for probate of the will. Section 1304, Code of Civil Procedure, provides that the notice of hearing a petition for probate shall be served upon the heirs and the devisees and legatees 'named in the will'. As the contestants were neither the heirs of the deceased nor 'named

in the will' (*Murray* v. *Superior Court*, 207 Cal. 381 [278 Pac. 1033]) they were not persons who were required by law to be notified of the hearing of a petition for probate and, under their own contention, the same rule would apply to notice of the motion.

"Contestants next present the point that, conceding that the decedent was a resident of the District of Columbia, the executor is chargeable with the value of all of the personal property of the deceased because it took possession of the same and that the executor had no authority to permit the removal of any of such property from the state without the order of the court. We may dispose of the latter portion of the point by stating that if the act of the executor in turning the property in question over to the personal representative in the District of Columbia was in accordance with law, an order of court was not necessary for such a transfer (*Estate of Fulmer*, 203 Cal. 693 [265 Pac. 920, 58 A. L. R. 430]) and there remains only the question as to whether the act of the executor was according to law. Contestants concede that it is the general rule that intangible property, which is the character of the property here involved, has its situs for all purposes, including administration, in the domicile of the decedent (see, also, Civ. Code, sec. 946) but question its applicability to cases involving bequests to charity violative of section 1313 of the Civil Code and rely largely upon the case of *Estate of Lathrop*, 165 Cal. 243 [131 Pac. 752]. That case was one in which the decedent died in the state of New York and the domiciliary executors came to California and were granted letters testamentary here. The property in California consisted of cash and shares in a local bank. The will left all of an estate valued at between two hundred and two hundred and fifty thousand dollars, except twenty-eight thousand five hundred dollars, to charity. The court held that the cash and bank stock in California was subject to the provisions as to charitable bequests of section 1313 of the Civil Code and that appellant, one of the heirs, was entitled to her proportionate part of the estate situated in this state. The question as to whether the cash and bank stock was properly situated in this state was not raised. The case cites and follows that of *Estate of Dwyer*, 159 Cal. 680, on page 683 [115 Pac.

242, 243] of which appears a statement with reference to the disposition of the purchase price of land in this state, due under a contract made by the deceased, which was collected by the California administrator after the close of the domiciliary administration of her estate in the state of Louisiana. The court declares that this purchase price 'being personal property the distribution of which was governed by the law of the domicile of the testator and which would have been transmitted to the administrator in Louisiana to be distributed there had that administration not been closed, the court here in the ancillary administration properly distributed it to the heirs at law of the testatrix according to the law of Louisiana'. However, as to certain real property in this state sold by the administrator here, the court held that since the testator had bequeathed more than one-third of her property to charity, even though the will was made and probated in Louisiana, the heirs could, in the California proceeding in probate, receive a share of the proceeds of such latter sale which would make their total share equal to two-thirds of the testator's total estate. Had the money which the court held properly distributable under the Louisiana law been paid and sent to the Louisiana personal representative before the probate proceedings there were closed the Dwyer case would very closely resemble the case at bar for the land purchase contract which was paid after the decedent's death was intangible property at the time of her death just as was the property sent to the personal representative in the District of Columbia in the case at bar. (See, also, *Estate of Gracey*, 200 Cal. 482 [253 Pac. 921].) The mere fact that the executor had the notes, mortgages and bonds in its possession and turned them over to the executor with the will annexed appointed in the District of Columbia would not be a determining factor in the question before us. If the executor was not entitled to the possession thereof as such executor its act of taking possession to which it was not entitled could not operate to convert the property into a part of the California estate of the deceased, for the situs of the property is determined by law of the time of decedent's death and not by the act of the executor.

A valid will made in another jurisdiction is valid in this state so far as it relates to personal property, 'subject,

however, to the provisions of section thirteen hundred and thirteen'. (Civ. Code, sec. 1285.) Section 1313, limiting charitable bequests, had no application to bequests in foreign wills until the words just quoted were added to section 1285 by the amendment of 1905. (See *Estate of Lathrop,* 165 Cal. 243, 248 [131 Pac. 752].) The effect of this amendment was to declare it to be the law that while, generally, a will valid under the laws of a foreign jurisdiction within which it was executed is valid in this state so far as it relates to personal property, a provision in such a will, in contravention of section 1313, shall, as to such a charitable bequest or devise, be as invalid as if the will were executed in this state. The amendment, coupled with section 1313, declares no rule as to the situs of a decedent's property but provides only that charitable bequests in the will of a nonresident probated in this state shall be invalid to the same extent as in the case of a domestic will. The matter of the disposition of the estates of deceased persons, the right of inheritance and testamentary disposition, is clearly within the legislative powers of the state (*Estate of Graham,* 187 Cal. 222 [201 Pac. 456, 18 A. L. R. 631]), but 'this exercise of original jurisdiction over the estates of nonresidents affects, and can affect, only the property within the state'. (*Estate of Clark,* 148 Cal. 108, 112 [82 Pac. 760, 761, 113 Am. St. Rep. 197, 7 Ann. Cas. 306, 1 L. R. A. (N. S.) 996].) This state being without power to legislate and thus control the distribution of property located in a foreign domiciliary jurisdiction the amendment to section 1285 cannot be construed to have that effect even if the language of the amendment were capable of such an interpretation.

"Contestants urge that, in any event, the promissory notes secured by mortgages and executed by residents of this state, included among the personal property delivered by the executor to the wife of the deceased, who became the administrator with the will annexed in the District of Columbia, constituted property having its situs in this state.

"In support of the contention the case of *Murphy* v. *Crouse,* 135 Cal. 14, 19 [66 Pac. 971, 973, 87 Am. St. Rep. 90], is cited as holding that the situs of a chose in action is, for the purpose of founding administration, where the

debtor resides. In this case, however, the court also says: 'In other words, our laws provide for the administration of the estates of all non-residents who have died leaving property here, real or personal, but, as to personalty, the distribution is to be made at, or, at least, according to the law of the domicile,' a recognition that the domiciliary law governs. In the case cited the plaintiff purchased from the executor, appointed in the state of Minnesota where the testator resided, certain shares of the capital stock in the defendant First National Bank of San Francisco. Defendant and appellant, Crouse, was appointed administrator with the will annexed, by the superior court of San Diego county in this state. The action was one to compel the defendant corporation to cause the shares of stock to be transferred to the plaintiff. The case is decided upon the premise that the situs of the property, the shares of stock, was in this state even though the deceased resided and the certificates were in the state of Minnesota. The decision is reconciled when we consider the language in *Chambers* v. *Mumford,* 187 Cal. 228, 233 [201 Pac. 588, 591, 42 A. L. R. 342]: 'A concession has been made under the decisions of this court in the right to modify the application of the maxim *mobilia sequuntur personam,* in the matter of certificates of stock in a domestic corporation. It has been held for the purpose of the inheritance tax law the situs of stock in a corporation is in the state of the incorporation. (Citing *Murphy* v. *Crouse,* and other cases.) A reason for making the distinction between certificates of stock and ordinary choses in action is in the fact that the former represent an interest in and derive their value from the tangible assets of the corporation. Beyond this the California decisions have shown no disposition to limit or modify the common-law rule that the situs of mere choses in action follows the domicile of the owner.' The opinion quotes from *Estate of Hodges,* 170 Cal. 492 [150 Pac. 344, L. R. A. 1916A, 837], that 'the authorities are uniform in holding that though personal property may be actually located in another state than that of the residence of the decedent at the time of his death, its situs for the purpose of imposing an inheritance tax upon it is in the state which was the domicile of the decedent and where the primary administration of his estate is being had.' In

*Estate of Hodges, supra,* it is further said: 'As a general rule, the domicile of the decedent draws to it in contemplation of law all the personal property of the decedent, no matter where its actual situs may be at the time of his death, and the distribution of it is governed and controlled by the laws of succession existing at the place of the domicile of the decedent.' We hold, therefore, that the trial court did not err in refusing to charge the executor with the property turned over by it to the widow of the deceased who became the administrator with the will annexed in the District of Columbia."

The orders settling the final and supplementary account and for distribution of the estate are affirmed.