[Civ. No. 6502. Fourth Dist. Apr. 5, 1961.]

Estate of MERGRETTE M. MOORE, Deceased. STANLEY MOSK, as Attorney General, Appellant, v. CHARLES GEISMAN et al., Respondents.

834

Stanley Mosk, Attorney General, and William J. Power, Deputy Attorney General, for Appellant.

Fenton B. Hackett, Robert D. Hill and Joseph L. Joy for Respondents.

SHEPARD, J.—This is an appeal from an order determining heirship.

The pertinent facts necessary for determination of the cause are shown by the record before us as follows: The deceased, Mergrette M. Moore, was, on February 6, 1943, a resident of the State of California. On that date she made a holographic will, valid under the laws of California. By that will she bequeathed all of her property to her sister, Phebe Ripple, for life. The dispute in this case primarily revolves around a single paragraph of the will which reads as follows: "She is to use this property as long as she lives and then it is to be given to some creditable non profit Science investigation Society, of her choice."

Some time after making the will, she removed her residence to the State of Florida, where she died March 16, 1958. She left real and personal property of substantial value in California, as well as other property in Florida. The will in question is the only one found. It was denied probate in Florida because Florida does not recognize the validity of holographic wills. It was admitted to probate in California.

After the will had been admitted to probate, the administrator with the will annexed filed its petition to determine heirship, and answers were filed by Phebe Ripple, a sister,

devisee of a life estate, Margaret G. McKee, a niece and heir at law of decedent, and also by Stanley Mosk, Attorney General of the State of California, under his duty to protect public charitable trusts because of the *parens patriae* position of the state with respect thereto. (*People* v. *Cogswell,* 113 Cal. 129, 136 [2] [45 P. 270, 35 L.R.A. 269].)

At the trial, no extraneous evidence was offered or received. The trial court ordered: (1) that the will bequeaths a life estate to Phebe Ripple; (2) that it does not create a trust, charitable or otherwise; (3) that the remainder is undisposed of and vests in the heirs of decedent; (4) that the real property and tangible personal property situated in California are subject to disposition under the will; (5) that the intangible personal property is not subject to disposition under the will and is to be distributed through the domiciliary administrator in Florida. The order does not attempt to determine whether or not the life beneficiary might invade the corpus. The attorney general appeals.

The primary contention of the parties revolves around the question of whether or not the will created a charitable trust. One subsidiary question is raised respecting how much of the property is controlled by the will and what, if any, is controlled by the laws of Florida. Counsel for the parties have filed commendably objective, erudite and exhaustive briefs.

### CHARITABLE TRUST

It is the contention of appellant that a charitable trust was created. Most of the California cases relating to charitable trusts have arisen through interpretations of article XX, section 9, of the California Constitution, which reads as follows: "No perpetuities shall be allowed except for eleemosynary purposes."

The original rule guiding our approach is stated in the early case of *Estate of Hinckley,* 58 Cal. 457, 509, as follows: " 'Where a bequest is made for charitable purposes and also for purposes of an indefinite character, which are not charitable, the whole bequest will be void. If, for instance, a bequest is made for such charitable, *or other* purposes, as the trustee should think fit, the whole bequest will be void for uncertainty.' "

California cases, with modified language, have consistently followed this rule, although a gradual but distinctly discernible broadening of vision and greater liberality toward interpretation in favor of charitable intention has occurred. In *Estate of Sutro,* 155 Cal. 727 [102 P. 920], the narrow

interpretation was still applied. However, some broadening can be noticed. It is there recognized, page 736, that: " 'A charity, in the legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government.' "

Among many cases using an extremely narrow interpretation there are, however, listed as approved charitable purposes "the advancement of civilization generally" and "undertaking of general utility."

In the later case of *Estate of Kline*, 138 Cal.App. 514, 516-517 [32 P.2d 677], the testator had used the terminology "paid, used and/or disbursed by my said Trustee to such persons, charitable organizations and/or corporations . . . organized for the purpose of aiding and for the betterment of crippled children, the persons, charities or organizations that shall receive the benefit of this charitable trust to be selected by my said Trustee in its absolute and uncontrolled discretion." There the court singled out the disjunctive "and uncontrolled discretion" of the trustee as invalidating the trust on the ground that it might be used for private purposes, stating: "The sole question here involved is, does the will permit any of the income of said trust to be used for noncharitable purposes?"

Still later, in *Estate of Peabody*, 21 Cal.App.2d 690, 691 [70 P.2d 249], the rule of the Hinckley case was repeated, in holding the bequest invalid because of the possibility of noncharitable purpose under the clause "then to go to an institution for old people." Here again, however, further advancement toward liberality is shown in the distinction between invalidity of private trust bequests for lack of certainty and validity of charitable trusts where the power is given to the trustee to nominate the recipient of the charity. Other examples of the narrower interpretation are numerous, but in each it will be noticed that the interpreting court largely bases its decision on some language of the will which clearly authorizes a use in which private individuals or corporations might legitimately line their pockets for private gain.

Recognition of the tendency toward greater liberality of construction in interpretations favorable to the charitable intention of the testator is to be found in many recent cases. In *Estate of Tarrant*, 38 Cal.2d 42, 46 [237 P.2d 505, 28 A.L.R.2d 419], in holding a valid charitable intent to have been expressed in the bequest to the pension funds of three different railroad corporations, our Supreme Court recognized that the bequest might be of some incidental benefit to the railroad corporations but that a charitable intent was evidenced and should be effectuated. ▪ In discussing the rules of interpretation, the court there said:

" 'Courts look with favor upon all attempted charitable donations, and will endeavor to carry them into effect if it can be done consistently with the rules of law. A bequest intended as a charity is not void, and there is no authority to construe it to be legally void, if it can possibly be made good.' [Citations.] . . . ▪ The scope of the word 'charity' changes and enlarges with the needs of men and must advance with the progress of civilization so as to encompass varying wants of humanity properly coming within its spirit. [Citations.] ▪ It is the policy of the law to favor gifts for charitable purposes, and a will providing such gifts will be liberally construed in order to accomplish the intent of the donor. . . .

▪ "The nature of the bequest is not necessarily determined by the status of the organization to which it is made, for 'a charitable gift may be made to a non-charitable institution so long as *the purpose of the gift* remains charitable.' . . .

▪ "[p. 49] While speculation and conjecture as to the testator's intention may not be followed by the court in order to avoid a conclusion of intestacy [citation], it is well established law in this state that 'a gift will not be permitted to fail because of misnomer, misdescription, or ambiguity of description.' "

▪ In *Estate of Henderson*, 17 Cal.2d 853 [112 P.2d 605], in applying the restrictions of Probate Code, section 41, to a bequest for aged, indigent or infirm members of the Order of the Eastern Star, the court said at page 857: "A bequest is charitable if: (1) It is made for a charitable purpose; its aims and accomplishments are of religious, educational, political or general social interest to mankind. [Citations.] (2) The ultimate recipients constitute either the community as a whole or an unascertainable and indefinite portion thereof.

[Citations.] The charitable nature of an institution is determined on the same basis.''

In *Estate of Rollins,* 163 Cal.App.2d 225, 227 [328 P.2d 1005], in interpreting the bequest clause: 'The remainder to go to some charitable institution, or research fund, or for a suitable memorial to my mother and father (no statue or monument),'' to be for charitable purposes, the court lucidly points out the changes in approach which have occurred in more recent times to eliminate the older antagonistic spirit of approach to charitable bequests. ▉ In its general comments the court said:

''Such a trust may exist even though no trustee is named and no intent to create a trust is stated. . . .

▉ ''The problem presented is essentially one of construction and, since no extrinsic evidence was introduced, is a question of law, upon which the independent judgment of this court is to be exercised. [Citation.] ▉▉ In the construction of wills, that interpretation which will avoid intestacy is to be sought [citation], and a residuary clause is always to receive 'a broad and liberal interpretation, with a view of preventing intestacy as to any portion of the estate' [citation]. Charitable bequests are favored and such a bequest will not be construed to be void, if it can possibly be made good. [Citation.]

▉ ''To create a valid charitable trust, the bequest must limit the use of the fund to charitable purposes. If the language permits noncharitable, as well as charitable, uses the bequest cannot be held valid as a charitable trust. . . .

''[P. 229.] There can be no doubt that 'some charitable institution' denotes charitable use only. As to a 'research fund,' the rule seems clear that this also is a charitable use. . . . Charitable uses are defined as those of 'religious, educational, political or general social interest to mankind' [citation], or as those for the relief of poverty, the advancement of education or religion, or beneficial to the community generally [citation].''

▉ Thus, in approaching the doorway of the testator's mind through the words of her bequest, courts do not now adopt an antagonistic spirit toward her charitable intent for it is the rule that where doubt exists, a gift must be interpreted in favor of a charity. (*Estate of Loring,* 29 Cal.2d 423, 435 [14] [175 P.2d 524]; *Estate of Faulkner,* 128 Cal. App.2d 575, 579 [6] [275 P.2d 818].)

In *Taysum* v. *El Paso National Bank* (Tex.Civ.App), 256

S.W.2d 172, in interpreting a bequest "to set up a research foundation in electricity," the court said, at page 176 [7, 8]: "The clause in question confines the use of the property to a research foundation in electricity. It does not literally provide that such activity shall not be pursued for private profit. Its manifest effect is to deprive her heirs of all right and interest in the property. No one is named to receive financial benefit from the electrical research sought to be fostered. The matter is not entirely free from doubt, in such circumstances the construction which will give it effect will be adopted and that which would defeat it rejected. [Citations], we hold that a charitable purpose is declared by the clause; the beneficiary of the charity the human race; the benefit sought to be conferred a knowledge of truth."

As was said in Bogert, Trusts and Trustees, volume 2A, page 119: "The extension of the boundaries of human knowledge is a valid trust purpose of this type. Not only is it of great social utility that existing knowledge be disseminated as widely as possible, but it is also highly desirable that research into new realms be encouraged, so that discovery may increase human happiness, security, and comfort."

Other text writers have reached the same conclusions. 14 Corpus Juris Secundum, 414, note 25(7), quotes a New York decision in support of its text that a charitable trust is "understood in a very large sense, comprising not only gifts for the benefit of the poor, but endowments for the advancement of learning, or institutions for the encouragement of science and art, and for any other useful and public purpose, as well as donations for pious or religious objects. In 10 American Jurisprudence 586, we find repeated the definition of Lord Camden, "A gift to a general public use, which extends to the poor as well as the rich." Black's Law Dictionary adopts the definition from *In re Henderson's Estate, supra.* Webster's New International Dictionary, 2nd edition, unabridged, states that it "is one that is for the public benefit, has an indefinite or undetermined number of beneficiaries, and may, and usually does, create a perpetuity."

Viewing the words of the will in the light of these principles, we cannot escape the conviction that the testator did express charitable intent. That a skeptic, antagonistic to charitable uses, might through technical analysis reach a different conclusion, is not controlling. The question is, "Do the words of the will, fairly read, exhibit a charitable intent to confer upon humanity generally greater knowledge of the

facts and natural laws controlling our universe and do her words exhibit a restrictive intent that none of the funds by her bequeathed shall be used to line the pockets of an individual or a corporation?'' She was a layman, writing a holographic will. We think her words were as guarded and careful as any ordinary layman might use. It is clear from her language that the administrator of the trust must be of ''good repute,'' ''worthy of judicious praise,'' ''an object of public esteem and faith''; that it must be a society formed and operated without possibility of profit for any individual or corporation; that its purpose must be educative investigation in the field of science. Investigation simply means inquiry or search for truth. The use of the term ''non profit'' and the fact that no individual or corporation is named to benefit can fairly mean only that she intended mankind generally to be the beneficiary of the truths revealed. This does not involve rewriting or adding words to the will. It merely means giving a fair and reasonable interpretation to the words used.

Of course, once the charitable intent has been arrived at, the rule of cy pres is applied and none of the possibilities of private profit thereafter can vitiate the purpose. No charitable trust is ever free from attempted use by private individuals for private gain. If such attempt occurs, the courts have ample power to block or stop it and the attorney general, as the over-all representative of the State can at any time petition the court for that purpose. (*In re Los Angeles County Pioneer Society,* 40 Cal.2d 852, 861 [9-10] [257 P.2d 1].)

### Personal Property Distribution

The only other point of dispute is whether the personal property distribution shall be according to the law of the deceased's domicile (Florida) or of the law of the situs of the personal property (California). The inventory of personal property in California shows intangible personal property, which is mainly in the form of bank accounts, totaling nearly $200,000. The tangible personal property is negligible in amount and respondents concede that its distribution is proper under the will. Therefore we need discuss only the intangible personal property. The control of real property under California law is likewise not the subject of dispute.

Appellant contends that all of the personal property should be distributed according to the law of California. He argues, in effect, that section 26 of the Probate Code must be deemed

a "law to the contrary" within the meaning of Civil Code, section 946. He cites such cases as *In re Rubens Will*, 128 App.Div. 626 [112 N.Y.Supp. 941]; *In re Hart's Estate*, 160 Misc. 198 [289 N.Y.Supp. 731]; *Estate of Renton*, 3 Cof. 120; *In re Comassi*, 107 Cal. 1 [40 P. 15, 28 L.R.A. 414]; and certain interesting but speculative law school reviews, in support thereof.

The Comassi case was concerned only with the revocation of a married woman's will by remarriage after death of her first husband. It does not concern itself with *what property* a will would control, nor does it relate to conflicts between lex situs and lex domicilii. The ancient Renton case (a superior court case) also appears to have been concerned with essential *validity*. The Rubens case relates to the validity in New York of the will of a resident of France. The Hart case concerns the validity of a will made in Connecticut and offered for probate in New York. Both the Rubens case and the Hart case do refer in some degree to the conflicts between lex situs and lex domicilii in the disposition of personal property. However, in view of the differences in development and historical interpretation of the code sections involved in New York and the fact that New York does not follow the majority rule in recognizing comity on this subject (*Higgins v. Eaton*, 202 F. 75, 78 [122 C.C.A. 1]), makes these authorities of little persuasive value. We think *Pickering v. Pickering*, 64 R.I. 112 [10 A.2d 721], represents the majority rule in the United States. As was there stated (page 723 [5, 6] [10 A.2d]):

"It is clear that at common law a will of personal property is governed by the law of the place of the testator's domicile at the time of his death. *Lapham v. Oleny*, 5 R.I. 413; 2 L.R.A., N.S., 415 note; 68 C.J. 624. It is also well settled that it is not to be presumed that a statute is intended to change a rule of common law unless such an intent appears. *Langlois v. Dunn Worsted Mills*, 25 R.I. 645, 649, 57 A. 910."

Furthermore, the rule of the common law, sometimes called the maxim *mobilia sequuntur personam*, has been recognized uniformly throughout California's history. As was said in *Estate of Barton*, 196 Cal. 508, 514 [238 P. 681], quoting with approval from Alexander on Wills:

"If a testator, subsequent to making a testamentary disposition of personal property, removes to a different state, or country, and becomes domiciled there, in the event of his death his will is controlled, as to personalty, by the laws of

his last domicile. Should different laws prevail and the will fail to comply with the requirements of the law of the last domicile of the testator, such change of domicile would, in effect, be a revocation of the bequests, since the personal property could not pass under the instrument, [citing cases]." See also *Estate of Layton,* 217 Cal. 451, 463-467 [10, 11] [19 P.2d 793, 91 A.L.R. 480]; *Fishback* v. *J. C. Forkner Fig Gardens, Inc.,* 218 Cal. 401, 402 [1, 2] [23 P.2d 293]; *Estate of Burnison,* 33 Cal.2d 638, 640 [3] [204 P. 330]; *Estate of Nolan,* 135 Cal.App.2d 16, 20 [3-5] [286 P.2d 899, 50 A.L.R.2d 1369]; *Estate of Brace,* 180 Cal.App.2d 797, 799 [1, 2] [4 Cal.Rptr. 683].

We are satisfied that Probate Code, section 26, was not intended to limit and is not in conflict with Civil Code, section 946. The ruling of the trial court that the disposition of the intangible personal property is controlled by the law of the domicile is correct.

No other points were raised on appeal.

That portion of the order decreeing that the will does not create a trust either charitable or otherwise; that the will fails to dispose of the remainder interest in said property; and that said remainder interest vested on the death of the decedent in the heirs at law of the decedent is reversed. The trial court is directed to modify its findings and order in accordance with the views herein expressed.

The order is affirmed in all other respects; each party to bear his own costs on appeal.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 31, 1961. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.