208 Cal.App.3d 981 (1989)
256 Cal. Rptr. 813
Estate of WILMER BREEDEN, Deceased.
PETER NEU et al., Petitioners and Appellants,
v.
MILTON LESSNER, as Cotrustee, etc., Objector and Respondent.
Docket No. D006663.
Court of Appeals of California, Fourth District, Division One.
March 16, 1989.
*983 COUNSEL
Richard T. Hilmen, Jr., and David H. Getz for Petitioners and Appellants.
Gilson & Heaton, Virginia R. Gilson and Irwin Gostin for Objector and Respondent.
OPINION
WORK, J.
When Wilmer Breeden died, his will designated the bulk of his estate to be placed in trust and used to promote the principles of socialism and related causes. Claiming Breeden's bequest was not intended to be a charitable trust and was not otherwise valid because it failed to designate definite beneficiaries and violated the rule against perpetuities, Breeden's nephew (Peter Neu) and niece (Nancy Deets) unsuccessfully petitioned to have the trust provision declared invalid and the estate residue given to them as intestate heirs. On their appeal from an order denying the petition, we distinguish between the definition of charitable intent which characterizes the motivating purpose of a trustor so as to identify a trust as charitable and the specific use of trust funds in a manner which may not qualify the trust for tax-exempt status. Because we hold the evidence establishes Breeden's testamentary intent was charitable, his will created a valid charitable trust. Accordingly, we affirm the order.

*984 FACTUAL AND PROCEDURAL BACKGROUND
Breeden, an active socialist, willed the residue of his estate to the Breeden-Schmidt Foundation or, if it had not been created before his death, to Milton Lessner and Willard Sinclair, as cotrustees, for distribution "to persons, entities and causes advancing the principles of socialism and those causes related to socialism. This shall include, but not be limited to, subsidizing publications, establishing and conducting reading rooms, supporting radio, television and the newspaper media and candidates for public office."[1] After the will was admitted to probate, Lessner as surviving trustee established the Breeden-Schmidt Foundation to receive the trust funds. Two attorneys, Louis Katz and Irwin Gostin, were selected to serve as cotrustees. The declared purpose of the foundation paralleled that of the testamentary trust, employing the same language which appeared in Breeden's will. As trustor, Lessner specifically declared: "[T]his is not intended to be a charitable trust, although the TRUSTEES may in the future, if they unanimously determine, apply for such designation and tax status. Unless that is done, however, the TRUSTEES are free to use the trust assets for noncharitable purposes as long as they determine that said purposes are consistent with the purpose of establishment of this trust."[2]
Appellants contend Breeden must not have intended the trust to be charitable in character because the funds can be used for any noncharitable purpose; as a noncharitable trust, it fails for lack of a designated definite beneficiary. However, even if the trust was valid, it was nevertheless unenforceable as against public policy. Lessner argues the will establishes a valid charitable trust and, in any event, if the trust were invalid, the residue would pass to a related charity under the cy pres doctrine, and not to the nephew and niece.

I
(1a) Petitioners contend the overwhelming and uncontroverted evidence establishes Breeden did not intend the testamentary trust to be charitable in character. They cite his testamentary language that the "trust fund *985 be made available to profit making ventures, or any other beneficiary, for whatever purpose he chose to use the funds, so long as he met the threshold qualification of being an advocate of, or related in some way to the cause of socialism." Moreover, they contend the will's express terms preclude a finding of charitable trust because they permit disbursement to noncharitable beneficiaries for noncharitable purposes. Thus, they assert that according to the will persons, entities and causes advancing the principles of socialism could qualify as beneficiaries simply by meeting the predicate of "advancing socialism" and then expend the funds for any noncharitable purpose desired. Lessner counters the heirs' challenge too narrowly defines "charitable" by equating "charitable" only with "tax-exempt." He contends the term "charitable" within the context of the trust should be broadly construed to satisfy the underlying altruistic intent of the testator.
(2) To establish a valid charitable trust, the bequest must limit the use of the fund to charitable purposes. (Estate of Thomason (1966) 245 Cal. App.2d 793, 798 [54 Cal. Rptr. 229]; Estate of Rollins (1958) 163 Cal. App.2d 225, 227 [328 P.2d 1005].) However, a bequest will not be deemed a charitable trust if the testamentary language permits noncharitable, as well as charitable, uses. (Estate of Rollins, supra, 163 Cal. App.2d at p. 227; Estate of Moore (1961) 190 Cal. App.2d 833, 839 [12 Cal. Rptr. 436].) On the other hand, because charitable bequests are favored, they will be upheld if one can possibly be construed as valid by applying liberal rules of construction designed to accomplish the intent of the trustor or testator. (Estate of Moore, supra, 190 Cal. App.2d at p. 839; Estate of Rollins, supra, 163 Cal. App.2d at p. 227; 12 Cal.Jur.3d, Charities, § 25, p. 122; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 37, p. 5398.)
(3) A bequest is charitable where it is made for a charitable purpose, the aims and accomplishments of which are religious, educational, political or in mankind's general social interests, and the ultimate recipient is either the whole or an unascertainable part of the community. (Lynch v. Spilman (1967) 67 Cal.2d 251, 261 [62 Cal. Rptr. 12, 431 P.2d 636]; Estate of Robbins (1962) 57 Cal.2d 718, 722 [21 Cal. Rptr. 797, 371 P.2d 573]; Estate of Henderson (1941) 17 Cal.2d 853, 857 [112 P.2d 605]; Estate of Thomason, supra, 245 Cal. App.2d at p. 798.) More precisely, "[c]haritable purposes include (a) the relief of poverty; (b) the advancement of education; (c) the advancement of religion; (d) the promotion of health; (e) governmental or municipal purposes; (f) other purposes the accomplishment of which is beneficial to the community." (Rest.2d Trusts, § 368, p. 246; Lynch v. Spilman, supra, 67 Cal.2d at p. 261.)[3] "The dissemination of a rational, though *986 perhaps unpopular, belief or doctrine constitutes an educational purpose." (Estate of Connolly (1975) 48 Cal. App.3d 129, 132-133, [121 Cal. Rptr. 325] fn. omitted.) (4) In this context, a trust designed to peacefully promote political purposes and change has been characterized as charitable. (Estate of Murphey (1936) 7 Cal.2d 712, 715 [62 P.2d 374]; Collier v. Lindley, supra, 203 Cal. at pp. 650-652; see Annot. (1950) 12 A.L.R.2d 849, 876-881.) Moreover, regardless whether considered educational or political in nature, a charitable trust designed to disseminate propaganda with the object of creating a more enlightened public opinion is valid. (Estate of Peck (1959) 168 Cal. App.2d 25, 28 [335 P.2d 185].) A charitable trust established for "`the purpose of teaching and practicing the doctrines of socialism'" has been upheld. (Lowell v. Lowell (1925) 29 Ariz. 138 [240 P. 280, 286], quoting City of Philadelphia v. Girard's Heirs (1863) 45 Pa. 9 [84 Am.Dec. 470]; 5 R.C.L. 299, § 11; but see contra, In re Loney (Can. 1953) 4 D.L.R. 539, 540-541 [holding "the purpose of promoting and propagating doctrines and teachings of Socialism" is not charitable]; see also Peth v. Spear (1911) 63 Wash. 291 [115 P. 164, 165] [upholding a charitable trust established by a conveyance of land to trustees for the benefit of an unincorporated association, the purpose of which was to acquire land and establish a community demonstrating the feasibility of socialism (Annot. (1950) 12 A.L.R.2d 849, 878)]; George v. Braddock (1889) 45 N.J. Eq. 757 [18 A. 881] [upholding a trust to distribute the works of Henry George advocating the single tax principle].)[4]
Although a trust to promote the success of a specific political party is not charitable (see 4A Scott, Law of Trusts (4th ed. 1989) § 374.6, p. 221; 41 A.L.R.3d 833, 836-837), the promotion of a particular cause or doctrine remains charitable regardless whether it is embraced as well by a political party (Rest.2d, Trusts, § 374, com. k, pp. 260-261). In fact, in Buell v. Gardner (1914) 83 Misc. 513 [144 N.Y.S. 945], the court upheld as charitable a gift in trust establishing a temperance fund to be used to defray the expenses of the Prohibition Party because the purpose of the devise was charitable  to advance the cause of temperance and not the fortunes of any *987 political party. (See Garrison v. Little (1898) 75 Ill. App. 402 [upholding a trust to promote the cause of woman's suffrage]; Taylor v. Hoag (1922) 273 Pa. 194 [116 A. 826, 21 A.L.R. 946] [upholding a trust to promote change in government such as the initiative and referendum, mandating the trustees to use all lawful methods to accomplish such results]; Harrington v. Pier (1900) 105 Wis. 485 [82 N.W. 345] [upholding a trust to promote temperance legislation]; see generally, 22 A.L.R.3d 886.) (1b) We are satisfied the promotion of socialistic principles through education and support of those whose activities serve to advance those principles does not offend public policy and purpose which may qualify a trust as charitable.

II
(5) It is a cardinal rule that in construing a will the testator's intent when clearly expressed within the document must be given effect. (Estate of Russell (1968) 69 Cal.2d 200, 205 [70 Cal. Rptr. 561, 444 P.2d 353]; Estate of Lindstrom (1987) 191 Cal. App.3d 375, 382 [236 Cal. Rptr. 376].) Thus, courts look with favor upon attempted charitable bequests, endeavoring to effectuate them whenever possible so as to avoid intestacy. (Estate of Tarrant (1951) 38 Cal.2d 42, 46 [237 P.2d 505, 28 A.L.R.2d 419]; Estate of Gatlin (1971) 16 Cal. App.3d 644, 648-649 [94 Cal. Rptr. 295]; Estate of Connolly, supra, 48 Cal. App.3d at p. 133; Estate of Peck, supra, 168 Cal. App.2d at p. 27.) In cases of doubt, the bequest will be construed as charitable. (Estate of Moore, supra, 190 Cal. App.2d at p. 839.)
(6) "Where the extrinsic evidence is not in conflict, the question of the meaning of a will is one of law and the reviewing court must give the writing its own interpretation." (Estate of Taff (1976) 63 Cal. App.3d 319, 327 [133 Cal. Rptr. 737].) Thus, "it is only when the foundational extrinsic evidence is in conflict that the appellate court gives weight to anything other than its de novo interpretation...." (Medical Operations Management, Inc, v. National Health Laboratories, Inc. (1986) 176 Cal. App.3d 886, 891 [222 Cal. Rptr. 455].)
(1c) The record contains four documents from which the trial court determined Breeden's testamentary intent was to establish the challenged "charitable" trust. These include the will; Lessner's declaration; the declaration of Breeden's attorney (and now deceased trustee), Sinclair; and Lessner's declaration of trust establishing the foundation on March 4, 1987. Our examination of those documents shows none is susceptible to an inference which actually conflicts with the trial court's finding that Breeden intended to create a charitable trust. Preliminarily, although the will does not expressly characterize the residuary gift as charitable, it does expressly provide distributing the funds to persons, entities and causes advancing the *988 principles of socialism, including without limitation the subsidizing of publications, establishing and conducting of reading rooms, and the supporting of radio, televison and newspaper media, as well as candidates for public office.
Sinclair's declaration summarizes how his professional relationship with Breeden evolved into a personal relationship and that he had drafted Breeden's will in 1983. He described Breeden as an active socialist who subscribed to several socialistic periodicals and supported socialistic causes. He characterized Breeden as not economically charitable, but rather miserly and thrifty. As to the foundation, Sinclair declared: "There was no discussion whatsoever to the effect that this foundation would be charitable in nature. To the contrary, it was Decedent's expressed intent that this foundation contribute to the campaigns of socialistic candidates for public office, support such other profit organizations as radio and television whose programs advocated socialistic views, and subsidize socialistic newspapers and periodical[s] such as New Times and Northern Neighbors.... Had Decedent expressed to me his intent that the trust created ... be charitable, I would have specified in the language of the Will the fact that the trust assets were to be used solely for charitable purposes.
"Furthermore, the Decedent communicated to me his intent that the monies be left to persons, entities and causes who and which advance the principles of socialism. These persons, entities and causes were to have extensive latitude concerning use [of] the money, and it was not the Decedent's intent to limit the use thereof to purely socialistic purposes.... Decedent never directed, implied, or even intimated, that these [socialistic] causes were to be charitable.
"Had he intended the beneficiaries of his trust to be charitable, it would have been a simple matter for him to have named a non-profit organization or other charitable organization as the beneficiary.
"There is no doubt in my mind that it was Decedent's absolute intent that the trust fund be made available to profit making ventures, political candidates and even activist groups in other countries, such as the Sandinistas in Nicaragua, so long as they advocated principles of socialism."
Lessner's declaration also characterizes Breeden as a committed and active socialist, concerned with the existence and resolution of social inequities, be they racial or economic. According to Lessner, Breeden believed: "[T]hat exploitation of man by man had to be replaced by a system that eliminated profit and greed, and consequently, he concluded that only through the education of the mass majority of people would it be possible to *989 make fundamental changes in our political and economical arena. He discussed with me, from time to time, his conviction that only through the advocacy of socialistic principles would it be possible to improve the standard of living of the many." Breeden told Lessner he desired to establish a fund to advance the principles of socialism by subsidizing publications and causes which would advance such principles. "It is my understanding that [Breeden] did not want to restrict me in making donations to those causes which might enable the trust to qualify as a tax exempt trust, and therefore, to that extent only, the trust may be construed not to be charitable. [Breeden] made clear to me that he did not want the use of the funds to be left by him to me to be restricted to those causes which would allow the trust to be tax exempt, but that I should use my discretion in assisting periodicals and causes which, in my opinion would best advance the principles of socialism." (Italics added.)
Finally, the declaration of trust, dated March 4, 1987, and prepared by Lessner, provides: "TRUSTOR specifically declares that this is not intended to be a charitable trust, although the TRUSTEES may in the future, if they unanimously determine, apply for such designation and tax status. Unless that is done, however, the TRUSTEES are free to use the trust assets for noncharitable purposes as long as they determine that said purposes are consistent with the purpose of establishment of this trust."
A review of the foregoing documents establishes the trial court did not abuse its discretion in concluding the testamentary trust was valid and charitable. Whether Breeden, during his lifetime, was generous or miserly is irrelevant. The issue before us is whether his testamentary intent as expressed within the will and evidenced in the accompanying declarations was charitable in the sense it was concerned with societal improvement. (7) Moreover, "[t]he nature of the bequest is not necessarily determined by the status of the organization to which it is made, for `a charitable gift may be made to a non-charitable institution so long as the purpose of the gift remains charitable.'" (Estate of Tarrant, supra, 38 Cal.2d at p. 47, quoting Estate of Henderson, 17 Cal.2d 853, 859, italics in original; Estate of Moore, supra, 190 Cal. App.2d at p. 838), and the donor intends no personal benefit to himself (Estate of Tarrant, supra, 38 Cal.2d at p. 47). (1d) Accordingly, we must determine whether the language of the will exhibits a charitable intent to confer upon American society generally a greater knowledge and understanding of socialism and thus advance its principles and related causes.
Here, regardless whether Breeden's testamentary charge of advancing the principles of socialism and related causes be characterized as educational, political or simply to promote broad societal interests, his testamentary *990 intent was charitable. Each of the trust's implied purposes to promote peaceful political action (Estate of Murphy, supra, 7 Cal.2d at p. 715), disseminate rational, though minority, beliefs or doctrines (Estate of Connolly, supra, 48 Cal. App.3d at p. 133), and form public opinion through educational enlightenment (Estate of Peck, supra, 168 Cal. App.2d at p. 28) is charitable and valid. The extrinsic evidence is not only consistent with, but compels this interpretation. Lessner's declaration emphasizes Breeden's concern was simply that his donations would not be limited to those entities or causes which would enable the trust to qualify as a tax-exempt entity and thus only to that extent was the trust not considered to be charitable. Similarly, Sinclair's declaration does not challenge the charitable character of the purposes underlying Breeden's testamentary charge and trust, but simply emphasizes Breeden's apparent intent not to restrict the choice of beneficiary selected as a means to advance socialistic principles. Throughout his declaration, Sinclair employs the term "charitable" in the context of "tax-exempt." It is this narrow construction of the term upon which petitioners base their case, erroneously equating the term "charitable" with "tax-exempt."
Contrary to petitioners' assertion, the trust does not permit distribution of trust proceeds for noncharitable purposes. Any doubts regarding whether Breeden's will permits the distribution of funds to socialists who then may use the funds for private means unrelated to the advancement of socialistic principles must be resolved in favor of a strict construction requiring the use of all distributed funds to advance socialistic principles. The express language of the will unambiguously restricts the distribution of funds to persons, entities and causes advancing the principles of socialism and those causes related to socialism. That mandate reasonably requires an interpretation that such funds can be employed only by persons or entities in a fashion designed to advance the principles of socialism and related causes.

III
In their reply brief, appellants assert that statutory authority confirms Breeden's testamentary trust permits allocations to noncharitable purposes and uses. Relying on Probate Code[5] section 16100, subdivision (a) defining charitable trust as one described in Internal Revenue Code section 4947(a)(1), petitioners assert Breeden's trust cannot be characterized as charitable because this statutory definition requires that no substantial part of the activities of the trust involve "carrying on propaganda, or otherwise attempting, to influence legislation ... and which does not participate in, or intervene in ... any political campaign on behalf of (or in opposition to) *991 any candidate for public office" as provided in 26 United States Code section 501(c)(3) which is incorporated within 26 United States Code section 4947(a)(1). Appellants construe this statutory definition too broadly; a charitable trust does not lose its character simply because it is not tax-exempt.[6]
Preliminarily, as a matter of statutory construction, the definition of charitable trust as it appears in section 16100, subdivision (a) sets forth the Internal Revenue Code definition within the context of the most stringent duties placed upon trustees of tax-exempt charitable trusts to maintain that status. Section 16100 specifically limits the use of that definition to chapter 1, article 5, which is entitled "Duties of Trustees of Private Foundations, Charitable Trusts, and Split-Interest Trust." A review of the subject matter of the remaining substantive, nonprocedural sections within article 5 supports this construction, as they include the requirement a trustee of a charitable trust or private foundation must distribute its income for each taxable year at a time and in a manner which will not subject the property of the trust to tax under Internal Revenue Code section 4942 (§ 16101); the restrictions upon a trustee of a charitable trust, a private foundation or a split-interest trust from engaging in any act of self-dealing as defined in Internal Revenue Code section 4941(d), retaining any excess business holdings as defined in Internal Revenue Code section 4943(c), or making any investments which would subject the property to tax under Internal Revenue Code section 4944 (§ 16102); and, a series of exemptions for split-interest trusts from the provisions of section 16102 (§ 16103). Moreover, as summarized in the margin, the legislative history of the statutory predecessor of section 16100 compels this construction.[7] In any event, just because a trust *992 is found not to be tax-exempt does not necessarily mean it is not a charitable trust for other purposes. (4A Scott, Law of Trusts, supra, § 348.4, at pp. 39-42.) In fact, "a trust may be charitable even though it is taxable, for the Legislature can tax all charitable trusts or such only of them as are characterized by distinguishing elements." (Westport Bank & Trust Co. v. Fable (1940) 126 Conn. 665 [13 A.2d 862, 866].) Indeed, "the word `charity' itself is given a narrower meaning in tax exemption cases." (Presbyterian Center, Inc. v. Henson (1966) 221 Ga. 750 [146 S.E.2d 903, 905]; see also Rabun Gap-Nacoochee School v. Thomas (1971) 288 Ga. 231 [184 S.E.2d 824, 830-831]; United Hospitals Service Ass'n v. Fulton County (1960) 216 Ga. 30 [114 S.E.2d 524, 526].)[8]

DISPOSITION[9]
The order is affirmed.
Wiener, Acting P.J., and Froehlich, J., concurred.
NOTES
[1] Pursuant to his will, Breeden established a family allowance trust for his stepdaughter, Lasca Tooles, with a $150,000 corpus to be administered by his attorney, Sinclair, as trustee and directed to distribute to Lasca $1,200 per month. Except for some special bequests, Lasca also received Breeden's tangible personal property. Upon her death, any remaining trust funds were to be added to the testamentary trust to promote socialistic principles. Breeden also bequeathed $7,000 to both his nephew and niece, as well as $1,000 to both the San Diego Bible College and the General Conference of Seventh-Day Adventists.
[2] Breeden declared his desire that if the foundation had not been established, it be so for the express purpose of advancing socialistic principles and that the remaining corpus of the trust be transferred to the foundation.
[3] "Thus, a valid charitable trust may be created: (1) to assist the promotion of improvements in the structure of the federal, state, and local governments; (2) to improve the living and working conditions of working people; (3) to improve the economic conditions of the country; (4) to aid industrial cooperation between employer and employee; (5) to foster educational opportunity for the study of governmental, industrial, and social problems; (6) to assist the practical application of the science of eugenics; (7) to strengthen prohibitive legislation directed against the use of intoxicants and narcotics; (8) to promote justice for the American Indian; and (9) to preserve the right of free speech and assembly." (12 Cal.Jur.3d, Charities, § 17, p. 114; summarizing the breadth of purposes of the trust challenged in Collier v. Lindley (1928) 203 Cal. 641 [266 P. 526].)
[4] Within this context, "`[n]othing would seem to be more certain than that the inhabitants of the United States have both individually and collectively the right to advocate peaceable changes in our constitution, laws, or form of government, although such changes may be based upon theories or principles of government antagonistic to those which now serve as their basis.'" (Estate of Mealy (1949) 91 Cal. App.2d 371, 375 [204 P.2d 971], quoting In re Hartman (1920) 182 Cal. 447, 449 [188 P. 548].)
[5] All statutory references are to the Probate Code unless otherwise specified.
[6] Granted, an exemption will be lost by an otherwise tax-exempt organization where it participates in any political campaign on behalf of any candidate for public office, even though it does not form a substantial part of the organization's activities. (United States v. Dykema (7th Cir.1981) 666 F.2d 1096, 1101.) This may explain why Breeden did not insist on tax-exempt status for his testamentary charitable trust. He simply desired to have his trustees distribute the trust funds consistent with his express purpose to advance the principles of socialism unrestricted by conditions which accompany a tax-exempt status.
[7] According to the Law Revision Commission Comment, the definitions within section 16100 are for the purposes of article 5 and are derived without substantive change from former Civil Code section 2271. This latter section was the result of urgency legislation, requiring and authorizing conformance of private foundations and charitable and split-interest trusts to federal tax law. (See Legis. Counsel's Dig., Assem. Bill No. 862, 3 Stats. 1971 (Reg. Sess.) Summary Dig., ch. 717, p. 105.) The legislation included an uncodified section summarizing the facts warranting its urgency status as follows: "The Federal Tax Reform Act of 1969 (P.L. 91-172) and regulations issued thereunder require that all private foundations cause certain amendments to be made to their governing instruments no later than December 31, 1971, in order to retain their tax-exempt status, unless a state statute accomplishes the same result. This act will eliminate the need for judicial action in most such cases. Its immediate operation is necessary to avoid an intolerable burden on the courts caused by foundations seeking to comply with the provisions of the Tax Reform Act." (Stats. 1971, ch. 717, § 4, p. 1445.)
[8] Parenthetically, we note the petitioners' concern with the language of the will permitting the use of funds to support "candidates for public office" to advance the principles of socialism authorizes the private use of funds for a noncharitable purpose is not compelling. Besides simply constituting a means to securing the declared purpose of the trust of advancing the principles of socialism, it would seem at minimum arguable the support of a candidate espousing socialist principles permits an advocacy medium designed to educate the electorate of the principles of socialism enabling it to act more intelligently in the public interest when deciding on the direction of governmental policy by voting on initiatives, as well as for (or against) candidates for public office. (See generally, Bogert, Trusts and Trustees (2d ed. rev. 1977) § 378, pp. 190-191.)
[9] In light of our disposition, we do not address the remaining contentions regarding the applicability of the doctrine of cy pres, the significance of the inclusion of any noncharitable purposes within the testamentary trust, and all contentions dependent upon a finding of a noncharitable trust.