103 Cal.App.2d 361 (1951)
Estate of VICTOR BJORS, Deceased. EDWARD BJORSES et al., Appellants,
v.
CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO, as Executor, etc., et al., Respondents.
Civ. No. 14661. 
California Court of Appeals. First Dist., Div. One. 
Apr. 10, 1951.
 Henry B. Lister for Appellants.
 Theodore M. Monell and Hilary H. Crawford for Respondents.
 WOOD (Fred B.), J.
 This is an appeal from a portion of the decree of final distribution in the estate of Victor Bjors, an appeal taken by Victor's sole surviving brother, Edward, by the son of Victor's predeceased sister, Ida, and by children and grandchildren of his predeceased sister, Wilhelmina. The appeal is from all of the decree except the portion thereof which distributed a $5,000 legacy to a friend of the testator.
 Victor died January 7, 1947, a resident of the city and county of San Francisco. He was a man of advanced years and left an estate of the appraised value of $433,482.92. His will, executed June 18, 1946, and a codicil thereto, executed September 18, 1946, were proved January 27, 1947.
 In his will, Victor recited that he was single and without issue; that his parents were no longer living; that one brother had died without issue; that his sisters Ida and Wilhelmina had died leaving children surviving them; that Edward was his only living brother; and that all of these relatives lived in Finland.
 After making these recitals, he gave all of his estate in trust to Crocker First National Bank of San Francisco, specifying first the general and the specific powers of the trustee in the handling of the trust property and funds. Then followed the *363 dispositive provisions, in two parts: Paragraph III, headed "Beneficiaries," relating, principally, to payment of income to the persons and groups of persons designated therein; and paragraph IV, headed "Termination," relating to disposition of the corpus upon termination of the trust, or of the several trusts, for payment of income.
 By his codicil, after giving $5,000 to a friend, Victor amended his will by making specific additions to and deletions from various portions of paragraphs III and IV of the will. He then ratified, approved, confirmed and adopted all of the provisions of the will as thus modified. It is one of these modifications that presents the problem upon this appeal.
 The will (prior to modification) directed the payment of one-third of the income to the brother Edward during his lifetime (and upon Edward's death, distribution to his lineal descendants per stirpes), and two-thirds of the income to the children of the two sisters, Ida and Wilhelmina. By the codicil he reapportioned the income, allocating one-fifth to Edward, two- fifths to the children of Ida and Wilhelmina, and two-fifths to Otto Sigfred Edwardson, a son of Edward and a resident and citizen of the Dominion of Canada. The codicil supplemented this redistribution of income by inserting in the "Termination" paragraph the followng clause: "(c-1) This trust shall terminate as to the remainder of my estate upon the death of my said nephew, Otto Sigfred Edwardson, at which time said portion of my trust estate shall go, vest in and be delivered to his child or children, in equal shares, then living."
 Does this clause mean that upon the death of Otto the trust terminates as to four-fifths thereof (the income payable to Otto and the income payable to the children of Ida and Wilhelmina) and that four-fifths of the corpus goes to the child or children of Otto, or that the trust then terminates only as to the two-fifths of the income allocated to Otto and that his children then take but two fifths of the corpus? The decree of distribution gives four- fifths of the corpus to the children of Otto, upon the death of Otto.
 This termination clause can best be interpreted by reading it in its context. Paragraph III, relating to payment of income and paragraph IV, relating to termination, as amended by the codicil, [fn. *] read as follows: *364
 "(III) Beneficiaries:"
 "(a) I hereby direct my said Trustee to pay [TEXT STRICKEN]-[one-third]- one- fifth of the income from my said estate to my brother, Edward Bjorses, heretofore mentioned, in monthly instalments, or at less frequent intervals (not less frequently than annually); provided however, that said Trustee may, in its absolute discretion, pay such additional amounts to my brother as may be necessary for his maintenance and support, or for the maintenance, support, education and comfort of any of his children, or to cover any emergency or unexpected contingency which said Trustee deems it proper to pay hereunder. If necessary, said Trustee is authorized to advance to my said brother such amounts as may be required, in order to carry out the intentions hereof, from the principal or corpus of said trust estate;"
 "(b) I hereby direct my said Trustee to pay [TEXT STRICKEN]-[the]- [TEXT STRICKEN]-[balance]- two-fifths of the income from my said estate to the children of my sisters, Wilhelmina Bjorses Philajamaki, also known as Wilhelmina Bjorses, above mentioned and of my sister Ida Bjorses Doli, above mentioned, in equal shares, per capita and not per stirpes, in monthly instalments, or at less frequent intervals (not less frequently than annually); provided, however, that said Trustee may, in its absolute discretion, pay such additional amounts, to or for any of said children as may be necessary for the maintenance, support and education of any of said children or to cover any emergency or unexpected contingency which said Trustee may deem it proper to pay. If necessary, said Trustee is authorized to advance to any beneficiary hereunder such amounts as may be required, to carry out the intentions hereof, from the principal or corpus of said trust estate. Any advances so made shall be offset against the interest of any beneficiary hereunder, in order to equalize a fair division of said portion of my estate bequeathed for the benefit of said children of my two sisters."
 "(b-1) I hereby direct my said Trustee to pay the balance of the income from my said estate to my nephew OTTO SIGFRED EDWARDSON (now residing in New Westminster, B. C., Canada, but intending to come to San Francisco in the very near future), so long as he shall live."
 "(c) In the event that, by reason of any law of the State of California, or of the United States, the income hereinbefore provided to be paid to any beneficiary hereunder shall be subject to forfeiture, or if, under the laws of any country of which any beneficiary hereunder should be a resident or citizen *365 (excepting the United States of America), any taxes levied or assessed against said trust estate, or the income therefrom, should be in excess of sixty per cent of the amount of said trust estate, or of such income, respectively, or, in the event that any beneficiary hereunder cannot be located within five (5) years after my death, and in the further event that none of the children of my brother can be so located, in any and all of such events the provisions hereof, so far as any beneficiary hereunder and the children of my brother are concerned, shall lapse, and the effect thereof shall be to increase the shares going to the persons not so affected as hereinafter provided;"
 "(d) It is my intention and desire that all the beneficiaries hereunder shall remove from any foreign country (the residence in which would invoke a forfeiture hereunder) to the United States of America, or to any friendly, foreign country, the laws of which will permit him or her to take as beneficiary under the provisions herein set forth; and, if any beneficiary should be located within five (5) years after my death in some foreign country the laws of which would require a forfeiture or lapsing under the provisions hereof, such beneficiary shall have a period of two (2) years, after being so located, to remove from such country to the United States of America, or to some friendly, foreign country where such forfeiture or lapse would not occur;"
 "(e) It is my further intention and desire that all the beneficiaries hereunder shall come to the United States of America and there shall be no forfeiture or lapsing of any provisions hereof should they, or any of them, come to this country, regardless of the extent of the taxes, assessments or charges against said trust or the income thereof. [fn. *]"
 "(IV) Termination:"
 "(a) This trust shall terminate as to [TEXT STRICKEN]-[one-third]- [TEXT STRICKEN]-[(1]-/[TEXT STRICKEN]-[3)]- one-fifth (1/5) of said estate (1) upon the death of my said brother, Edward Bjorses, or (2) five years after the date of *366 my death if my said brother shall not have been located within said period of time, or (3) two years after the locating of my said brother if he shall not, within said period of two years, be situated in a country the laws of which will permit him to take as beneficiary hereunder;"
 "(b) Upon such termination, said [TEXT STRICKEN]-[one-third]- [TEXT STRICKEN]-[(1]-/[TEXT STRICKEN]-[3)]- one-fifth (1/5) of said trust estate shall be paid and delivered in equal shares to the children of my said brother, then living, and to the children of any deceased child by right of representation, subject and pursuant to the foregoing provisions hereof."
 "(c) This trust shall terminate, as to [TEXT STRICKEN]-[the]- [TEXT STRICKEN]-[remainder]- two-fifths (2/5) of my estate, (1) five years after the date of my death, if none of said children of my said sisters shall have been discovered within said period of time, or (2) two years after discovering said children if they, or any of them, shall not, within said period of two years, be situated in a country the laws of which will permit him or her to take as beneficiary pursuant to the provisions hereof, provided that such termination shall be only pro rata effective as to the interest of any child not so situated within said period of two years, or discovered within five years after my death. [fn. *]"
 "(c-1) This trust shall terminate as to the remainder of my estate upon the death of my said nephew, OTTO SIGFRED EDWARDSON, at which time said portion of my trust estate shall go, vest in and be delivered to his child or children, in equal shares, then living."
 "(d) Prior to distribution hereunder, my said trustee shall pay to the beneficiaries hereunder (subject to the provisions as to forfeiture and lapsing hereinbefore set forth) the income from said trust estate until the expiration of the period within which the ultimate distributees hereunder may be determined, reserving unto said trustee the power to determine in its discretion the amount of such income to which any beneficiary may be entitled hereunder. Any payment made by said trustee in good faith hereunder shall absolve said trustee from any liability to any person or beneficiary entitled hereunder to become an ultimate distributee of said trust, it being my *367 intention to provide for the beneficiary hereinbefore mentioned, so far as may be possible, the benefits of the income from said trust estate pending the ascertainment of the specific personnel of the ultimate distributees."
 "(e) In the event of the lapsing of all of the provisions hereof for the benefit of my said brother and his children and the descendants thereof, and upon termination of said portion of this trust as herein provided, said portion of said trust estate shall be paid, delivered and distributed to my cousin, Ida Pascoe, of San Jose, California."
 "(f) In the event of the lapsing of all of the provisions hereof for the benefit of the children of my sisters, and upon termination of said portion of this trust as herein provided, said portion of said trust estate shall be paid, delivered and distributed to my said cousin, Ida Pascoe, of San Jose, California."
 Here we have a picture of a man advanced in years. He has built up a considerable fortune in the country of his adoption. He gives thought concerning the disposition of these properties upon his death. They consist, principally, of four parcels of land in San Francisco, with a furnished apartment house upon each parcel. He tells us, in his will, that he has no immediate family. His mind turns to his brother and to his nieces and nephews, whom he tells us are in the old country, Finland, and expresses the desire that they, all of them, come to the United States of America, the country of his adoption. He puts all of his properties in trust for the benefit, principally, of these near relatives in Finland.
 [1] He directs his trustee to pay "one-third of the income from my said estate" to his brother Edward, with authority to make advancements (par. III-a of the will). He declares, as to this portion, that "this trust shall terminate as to one-third of said estate" upon the death of Edward (par. IV- a), and that "upon such termination, said one-third of said trust estate" shall be delivered to the then living children of Edward and to the children of any deceased child of Edward, they to take by right of representation (par. IV-b). In subparagraphs (c) and (d) of paragraph III he specifies certain events upon the occurrence of which the interest of a beneficiary affected thereby shall lapse; such a lapsing to "increase the shares going to the persons not so affected." In the event of the lapsing of "all of the provisions hereof for the benefit of my said brother and his children and the descendants thereof" and upon termination of "said portion of said trust *368 estate," then "said portion" shall be distributed to his cousin, Ida Pascoe (par. IV-e). Clearly, he has created a separate trust of one-third of the income and one-third of the corpus for the benefit of his brother and his brother's lineal descendants. The fact that the contingencies specified for the gift over to Ida have not occurred does not detract from that picture. Indeed, their very specification (preventing a gift over to the other group of primary beneficiaries upon the occurrence of the events specified) emphasizes and makes doubly clear Victor's intent to create a separate trust of one-third of the corpus and income. By his codicil he made no change at all in this part of his will except to change the amount of this trust from one-third to one-fifth of the whole estate. The codicil continued in effect the separate character of this trust for the brother and his descendants.
 Next, in his will, he makes provision for the children of his deceased sisters, Ida and Wilhelmina. He directs his trustee to pay the "balance [necessarily, two-thirds] of the income from my estate" to the children of the sisters, in equal shares, per capita, with authority to pay additional amounts to "any of said children" and to advance to "any beneficiary hereunder" such amounts as may be required, "any advances so made" to be "offset against the interest of any beneficiary hereunder" in order to equalize a fair division of "said portion of my estate bequeathed for the benefit of said children of my two sisters" (par. III-b). He neglects to prescribe the duration period of this portion of the trust, except that, "as to the remainder of my estate" (necessarily meaning two- thirds, the one-third to the brother and his descendants having been separately and completely disposed of), if any of the children of the sisters be not discovered within five years or, if discovered within five years, is in a country whose laws prevent him from taking, and he does not within two years move to a country under whose laws he can take, "this trust shall terminate," but "such termination shall be only pro rata effective as to the interest of" such child (par. IV-c). In paragraph III-c, he declares that an interest so terminating shall serve to "increase the shares [of income] going to the persons not so affected"; in this case, presumably, to increase the shares going to the other children of the sisters. The fact that the contingencies expressed in paragraphs IV-c, III-c, and III-d did not occur does not lessen in the slightest degree the clear indication of Victor's intent to do all within his power to enable each beneficiary to receive the share allotted him. The same observation is true of Victor's mistaken belief *369 that an alien residing in a country whose laws at the time of the testator's death did not meet the reciprocity requirements of section 259 of our Probate Code could take by moving to a country whose laws met those requirements. Finally, in respect to this group of beneficiaries, the will declared that "in the event of the lapsing of all of the provisions hereof for the benefit of the children of my sisters" and "upon termination of said portion of this trust as herein provided," then "said portion of said trust estate" shall be distributed to Victor's cousin, Ida Pascoe (par. IV-f). Here, equally as in the case of the trust for the brother and his children, the testator demonstrated an intent to create a separate trust (two-thirds of the estate) for the children of the two sisters. The codicil made no change in this part of the will except to change the amount of this trust from two-thirds to two-fifths of the income of the whole estate. He did this by substituting "two-fifths" for "the balance" of the income in paragraph III-b, and "two-fifths" for "the remainder" (of "my estate") in paragraph IV-c. Insofar as these changes are concerned, the codicil continued in effect the separate trust which Victor created for the payment of two-fifths of the income to the children of the two sisters.
 Within three months of the making of his will, Victor decided to give a $5,000 legacy to a friend, and learned or recalled that Otto, a son of his brother Edward, was residing in Canada "but intending to come to San Francisco in the very near future" (par. III-b-1, added by the codicil),--an intention, a plan, a move which Victor contemplated with fond satisfaction in view of his expressed "intention and desire that all the beneficiaries hereunder shall come to the United States of America" (par. III-e).
 Accordingly, he wrote and executed the codicil, making the $5,000 gift to the friend, conveying the "rest, residue and remainder" instead of "all" of the estate to his trustee, cutting from one-third to one-fifth and from two-thirds to two-fifths the portions assigned the two trusts described in the will, and setting aside the remaining two-fifths in trust for Otto and Otto's children. This provision for Otto and his children Victor made by inserting subparagraphs III-b-1 and IV-c-1 at appropriate places in the will.
 By his will as amended, he directs his trustee to pay the "balance" of the income (necessarily two-fifths, using the very word that he used originally to designate the two-thirds of income payable to the children of his sisters) to Otto "so *370 long as he shall live" (par. III-b-1). Here is a third separate trust, income for Otto during his lifetime.
 He then declares that "this trust shall terminate as to the remainder of my estate" upon the death of Otto, "at which time said portion of my trust estate" shall go to Otto's children, "in equal shares, then living" (par. IV- c-1). "Remainder" is the very word, in a like context, which he used in paragraph IV-c of the will, in the termination clause applicable to the trust for the children of the two sisters, and which in the will clearly meant "two-thirds." This definitely suggests that when using this word in paragraph IV-c-1 he meant "two-fifths" or "the remaining two-fifths." This view is aided by the expression which immediately follows, "said portion of my trust estate." Having planned three trusts, and believing that he had created them, he quite naturally used the words "said portion" when referring to the intended grant of two-fifths of the estate to Otto and his children. Incidentally, Victor used the words "said portion" in paragraph IV-e when referring to the trust for Edward and his children, and in paragraph IV-f when referring to the trust for the children of the two sisters.
 [2] Even more persuasive of this interpretation is the general scheme or plan of the testator which the will as originally written and as amended abundantly discloses: The creation of three separate trusts for these three groups of relatives, with no gift over from the trust for one group to the trust for another group. "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." (Prob. Code, 101.) "The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible. (Civ. Code, 1317, 1318. [fn. *]) Statutory rules of interpretation are to be followed insofar as they aid in determining the intention of the testator, but they are all subject to the fundamental rule that the intention as shown by the will must prevail." (Estate of Wilson, 184 Cal. 63, 66-67 [193 P. 581].) "The primary purpose of all interpretation of wills is, of course, to ascertain the testator's intent, as disclosed by the language he has used. (Civ. Code, 1317. [fn. *]) Of this class of questions it may be said, with more *371 truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. 'Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills. It seldom happens that two cases can be found precisely alike,' says Washington, J., in Lambert's Lessee v. Paine, 3 Cranch (U.S.) 97, 131, [2 L.Ed. 377]." (Estate of Henderson, 161 Cal. 353, 357 [119 P. 496].) "It is well settled that the will and the entire scheme of disposition of the testator's property should be viewed as a whole, and the words used should be considered in reference to the context and construed according to their surroundings. (Estate of Franck, 190 Cal. 28 [210 P. 417].)" (Estate of Welch, 83 Cal.App.2d 391, 396 [188 P.2d 797].)
 It appears, then, that Victor by his will as modified by the codicil made complete disposition of three-fifths of the residue of his estate: one- fifth of the income to Edward for life and upon his death one-fifth of the corpus to the lineal descendants of Edward, two-fifths of the income to Otto for life and upon his death two-fifths of the corpus to his children.
 [3] As to the other two-fifths, he directed payment of the income to the children of the deceased sisters without saying how long, whether for life or for years or other determinable period of time, and said nothing about disposition of that two-fifths of the corpus. It is reasonably inferable from such a disposition that the testator intended that each of these children receive and enjoy for life the income allotted to him, especially when in the same will the testator authorized the trustee to make such advancements to any of the children as might be necessary for the maintenance, support and education of the child, or to cover any emergency or unexpected contingency, and when, in addition, the testator sought to protect these beneficiaries in the enjoyment of income by including a spendthrift clause. [4] It is not necessary to the creation of a life estate or interest that the donor, trustor, or testator express in words the period of its duration, nor is it necessary that he provide for disposition of the property upon termination of a life estate or interest. (See In re Reinhardt, 74 Cal. 365 [16 P. 13]; Bekins v. Smith, 37 Cal.App. 222 [174 P. 96]; Garland v. Garland, 73 Me. 97; and Schuldt v. Reading Trust Co., 270 Pa. 360 [113 A. 545], and 292 Pa. 327 [141 A. 152].)
 [5] We do not know and have no means of knowing what disposition Victor intended to make of this two-fifths of the *372 corpus of his estate, nor of that portion of this two-fifths equaling or representing the portion of income given each of this group of beneficiaries, upon the death of each such beneficiary. His will is completely silent upon this question. The conclusion is inescapable that he died intestate in respect to the corpus of this two-fifths of his estate, which therefore goes to his heirs in accordance with the laws of descent and succession of California. The heirs must be ascertained as of the date of Victor's death. They will come into enjoyment of their respective shares of this two-fifths of the corpus as and when the several members of this group of income beneficiaries die. Upon the death of any such income beneficiary, there will be deliverable to this group of remaindermen a portion of the corpus which bears the same ratio to two- fifths of the corpus as the amount of income receivable by that life tenant bears to two-fifths of the income of the estate. It remains for the trial court to determine who those heirs are and what portions, respectively, they take of the undisposed remainder of two-fifths of the corpus of the estate. In an heirship proceeding brought in the superior court by certain of the heirs and legatees of Victor Bjors, a decree was rendered September 21, 1949, and is a part of the record upon the appeal from the decree of final distribution rendered May 26, 1950. It would appear that the decree of September 21, 1949, had become final. It determined who were the children of the deceased sisters of the testator and what portions they respectively should receive of two-fifths of the income, provisions which were appropriately embodied in the decree of final distribution. However, it also appears that the proceeding to determine heirship did not present the question of determining who inherited, in what shares, property as to which Victor died intestate.
 [6] We should add that we do not find the question of severability seriously involved. It is simply a case in which the testator created equitable life interests in two-fifths of the income and failed to make disposition of the remaindermen interests in that two-fifths of the corpus. Such lack of foresight and failure of disposition upon the part of the testator cannot be suffered to have an impairing effect upon the dispositions he did make, when his desire that those dispositions be effectual is so clearly manifested in his will.
 Those portions of the decree of distribution which prescribe the period of time during which income is payable to the children of the two deceased sisters of the testator and those which fix the portion of the corpus of the estate which is *373 deliverable to the children of Otto Sigfred Edwardson upon his death, are reversed, and the superior court is instructed to ascertain and determine the persons who inherited that portion of the estate of Victor Bjors not disposed of by his will, and to modify the decree of final distribution in accordance with this decision, including in the modification the court's determination of heirship to the intestate portion of the estate.
 Peters, P. J., and Bray, J., concurred.
NOTES
[fn. *] *. In the quoted portion which follows, words stricken from the will by the codicil appear in strikeout type; words inserted, in italics.
[fn. *] *. In respect to the subject matter of subparagraphs (c), (d), and (e) of paragraph III of the will, the parties stipulated and the trial court found that "said parties and their descendants and any and all legatees and devisees under the will of said decedent and any and all persons interested in the estate of said decedent were at the time of his death and are residents and nationals of countries under the laws of which residents and citizens of the United States have and had a reciprocal right to take real and personal property by succession and testamentary disposition upon the same terms and conditions as residents and citizens of said foreign countries."
[fn. *] *. Concerning the pro rata termination as to two- fifths of the estate allocated for income payments to the children of the sisters, Ida and Wilhelmina, upon the contingencies expressed in subparagraph (c) of paragraph IV, the trial court in its decree of final distribution found that "neither of said contingencies [the two-year and the five- year contingencies] has arisen and that said provisions of said will and codicil are accordingly inapplicable."
[fn. *] *. The text of former sections 1317 and 1318 of the Civil Code now appears in sections 101 and 105, respectively, of the Probate Code.
[fn. *] *. The text of former sections 1317 and 1318 of the Civil Code now appears in sections 101 and 105, respectively, of the Probate Code.