[Civ. No. 19253.   Second Dist., Div. Two.   Dec. 23, 1952.]

ESTATE OF LILLIAN E. SCHRAMM, Deceased.   FARM-
ERS AND MERCHANTS NATIONAL BANK OF LOS
ANGELES, Respondent, v. CLARENCE LIZDENNIS,
Appellant.

Lester L. Lev for Appellant.

Sheppard, Mullin, Richter & Balthis, and Frank S. Balthis for Respondent.

MOORE, P. J.—By her last will and its codicils executed in 1951, Lillian E. Schramm created four trusts (A, B, C and D) with her favorite bank as a trustee. After her decease in February, 1952, the bank and Clarence Lizdennis, sole beneficiary under Trust D, were, according to the will, appointed cotrustees of that trust, and the bank as sole executor. Clarence was to receive the total net income of Trust D which was to terminate five years after distribution. At that time the assets are to be distributed to Clarence free of the trust. If he should not survive the period of the trust, it will continue as a trust for charitable uses.

The controversy here involved arises out of the seventh clause of the will.* Because item 4 under A directs that

---

*"SEVENTH: I give, devise and bequeath to THE FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES, a national banking association, and to CLARENCE LIZDENNIS, as Co-Trustees, in trust, to hold, manage and distribute as hereinafter provided, the property hereinafter listed and described under the section establishing Trust D.

"A. ESTABLISHMENT OF, AND PROPERTIES TO BE INCLUDED UNDER, TRUST D.

"1. The properties which are hereby devised and bequeathed to the Co-Trustees and to be held under Trust D are as follows:

"The Carroll W. Blake Building located at 430 South Broadway in the City of Los Angeles, together with all personal property located therein.

"2. If said real property or said personal property are sold prior to my death the net proceeds received therefrom are to become a part of the corpus of said Trust D.

"3. Said properties above described are devised subject to encumbrances, if any, and to all unpaid real estate taxes and assessments constituting liens thereon.

"4. I direct that one of the Co-Trustees, said CLARENCE LIZDENNIS, is to be engaged as building manager for said properties, and providing he devotes his full business time to said activity he is to receive the sum of $2,000.00 per month for performing the duties of said building manager.

"B. DISTRIBUTION OF INCOME AND PRINCIPAL AS TO TRUST D.

"1. The Trustee shall first set aside from the gross income such amounts as in their judgment are reasonably necessary to pay prin-

Clarence is to be engaged as "building manager for said properties" at a salary of $2,000 a month provided he "devotes his full business time to said activity" he conceives that he should have been promptly designated as the manager of the Blake Building by the bank which was qualified as executor of the will so that he could receive, during probate, the specified salary for devoting his full time to the task of managing the Blake Building. Respondent contends that the testator did not intend that Clarence should become the building manager during probate but that he should enter upon such duties after distribution of the entire estate to the trustees. For the reasons about to be stated, it appears that the trial court's interpretation of the will was without error.

██ It is agreed that in construing a will the court must ascertain the intention of the testator as expressed by his own declaration. The authorities concur. (*Estate of Layton,* 217 Cal. 451, 458 [19 P.2d 793, 91 A.L.R. 480]; *Estate of Wilson,* 184 Cal. 63, 67 [193 P. 581].) ██ It is also a rule of construction that if the intention cannot be enforced to its full extent, it must have effect as far as possible. (Prob. Code, § 101; *Estate of Bjors,* 103 Cal.App.2d 361, 370 [229 P.2d 468].) Each case depends upon its own peculiar facts. But little aid can come from precedents except insofar as they announce or confirm established principles. (*Ibid.*) [3] The will and entire scheme of disposition should be viewed as a whole. (*Estate of Franck,* 190 Cal. 28, 31 [210 P. 417].)

██ The language of testatrix' writings impels the conclusion that she directed the trustees to employ one of the cotrustees as building manager for the trust property and that such employment was to be during the administration of the testamentary trust. The above quoted Article Seventh devises her property to the bank and appellant as cotrustees

cipal and interest on any existing encumbrances, real estate taxes and assessments, and also reasonable amounts for depreciation and maintenance expenses, and also including the building manager's compensation above mentioned.

"2. I request that my individual Co-Trustee, CLARENCE LIZDENNIS, consider the payment to WILLIAM WINTERBERG of the sum of $100.00 per month during the continuance of this trust from the net income of said trust. This is made as a request only and is not a direction, and the individual Co-Trustee shall have entire discretion to act in such matter.

"3. The net income during the continuance of this trust shall be paid to or for the benefit of said CLARENCE LIZDENNIS."

to administer and distribute as directed. The corpus of Trust D is the Blake Building and its movable contents, subject to encumbrances. The trustees are to provide for such existing encumbrances, taxes, maintenance expense and the manager's salary, and to pay the net income to appellant. No matters are discussed in Article Seventh other than those pertaining to Trust D. The employment of appellant as building manager is mentioned in no other portion of the will. That fact is in itself largely determinative of respondent's claim that appellant's employment is to be operative during the trust. It is significant also that the employment provision falls within the section A that designates the properties of Trust D. It is equally as important that within the same section the trustees are directed to employ one of the cotrustees. Naturally, he could not have been a cotrustee until after distribution of the corpus of the trust created by the will. Appellant argues that the term "cotrustee" is merely a description of the person. That is not correct. Clarence Lizdennis needs no description to emphasize his identity. His name is most unusual. The purpose of the testatrix in making use of the term "co-trustee" was to leave no doubt of the trustees' authority to employ one of them to occupy a specific station. Its use and the power granted are on a par with the provisions that "the corporate trustee shall receive for its services while acting as co-trustee, the same compensation as if it were acting as sole trustee" leaving no pay for appellant as cotrustee who shall receive the specified compensation for "his full business time to said activity as building manager." In view of the order outlined and the language employed by testatrix, it is unmistakable that she intended for appellant to be employed only by the trustees and only during the period of the trust.

There are some internal evidences to support the foregoing conclusion. By her codicil of December 21, 1951, she specified the Blake Building and its movable contents as the "properties hereby devised to the Co-Trustees" and added: "Except the income from said property received during the probate administration of my estate which is specifically included within the residue of my estate bequeathed under Article Eighth." That provision definitely demonstrates that she did not intend for Clarence, as the beneficiary under Trust D, to share in the income during the administration of the executor, despite the provision for him

to have the residue of income in possession of the bank at the close of probate.

It is, of course, the rule that income earned by the trust property during probate inures to the benefit of the trust. (Prob. Code, § 163; *Estate of Platt,* 21 Cal.2d 343, 347 [131 P.2d 825]), and is payable to the beneficiary during the court's administration. However, that rule gives way when the testator has made specific directions in her codicil to avoid the general rule. An expressed intention controls the distribution of income from trust property.

Moreover, by her codicil testatrix amended her residue clause (section Eighth) to provide that all income from the Blake Building during probate administration be used to pay expenses of probate, all taxes and ''any taxes imposed upon any assets not included in my probate estate but which are includible in the adjusted gross estate for Federal Estate tax purposes.'' Also, she required by her codicil that the income from the Blake Building is to be used by the executor for the payment of administration expenses and taxes, ''and I do not intend that the beneficiaries under this residuary clause are to receive such income commencing from the date of my death.'' Such provisions show a clear intention that appellant shall have no interest in the income during probate but that such income shall be used to pay state and federal taxes and all expense of administration. Payment to appellant of the fixed compensation out of the Blake Building income during probate is contrary to the expressed purpose of testatrix in her codicil. The evidence shows that should appellant take $2,000 a month during probate, there would not be left sufficient funds for payment of probate expense and taxes and the sums due on the encumbrances.

Finally, the testatrix declared outright that it was her intention that the income of the properties passing under the residuary clause is to be used to pay administration expense and taxes. She knew and the proof shows that the disbursement of those funds to appellant would leave the executor without funds for administration expenses and such a calamity would vitally affect all creditors and beneficiaries of the estate. If she had intended appellant to manage the Blake Building during probate, she would surely have told as much to Mr. McGinley, employee of the bank who conferred with her upon the details of her will. When she

discussed the subject with Mr. Scott, an officer of the bank, she did not once indicate a desire for appellant to have any voice in management or any share in the income of the trust properties prior to distribution. Such testimony was introduced by appellant.

The order is affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied January 12, 1953, and appellant's petition for a hearing by the Supreme Court was denied February 19, 1953.