[Civ. No. 19570.   First Dist., Div. One.   Oct. 30, 1961.]

Estate of CLARA I. SMITH, Deceased. CLINTON E. SMITH, Appellant, v. FLOYD V. SMITH et al., Respondents.

Bohnett, Hill & Bohnett, L. D. Bohnett, Hoey, Hoey and Hall and Francis Hoey for Appellant.

Tinning & DeLap and Robert Eshleman for Respondents.

BRAY, P. J.—Respondents Floyd V. Smith, Leonard A. Smith and Ernest A. Smith, nephews of Clara I. Smith, deceased, filed in her estate a petition for order determining heirship. It was resisted by appellant Clinton E. Smith, also a nephew of said deceased, who here appeals from the order determining heirship, which decreed that the property therein described be distributed to appellant "as trustee for the benefit of all parties in interest, with the right to a life estate in said real and personal properties for the lifetime of said Clinton *A.* Smith . . . [with] remainder over in and to said real and personal properties or of the full proceeds of sale thereof" to any issue then surviving of said Clinton E. Smith and to said respondents and to Earl W. Smith and Howard K. Smith.[1]

### QUESTIONS PRESENTED

1. Do the contract, the original will and the codicil thereto show an intent of the testatrix to devise the property to appellant in fee simple?

2. Is there any provision justifying the probate court in declaring a trust?

### RECORD

This appeal is on a settled statement. It was stipulated at the hearing that there was no apparent ambiguity in any of the documents that would require oral testimony to explain, so no evidence, other than the documents, was introduced.

A part of deceased's estate was an orchard, which for some time prior to her death on July 4, 1958, had been managed by appellant. On May 24, 1948, she as first party and appellant as second party entered into a contract, the pertinent parts of which follow:

"Now, THEREFORE, in consideration of the premises and the

---

[1] The latter two persons, also nephews of said deceased, did not join in this proceeding.

mutual covenants of said parties herein contained it is agreed as follows:

"1. That second party shall hereafter be responsible for the operation and management of said property;

"2. That the net income from said property . . . shall be divided equally between said parties . . .

"3. First party agrees that she will bequeath to second party by will all of said real property and all farm equipment and household furniture and effects, provided that first party reserves the right to make such bequests of specific items of household furniture and effects as she sees fit.

"4. Second party agrees that he will make a will leaving all of said property so bequeathed to him by first party, or the proceeds thereof in case of sale, to his brothers, Ernest, Leonard, Ray, Howard, Earl and Floyd Smith in equal shares; provided, that if any of said brothers shall predecease second party leaving issue said issue shall receive the share of said predeceased brother by right of representation; and provided further should second party leave surviving issue such issue shall share in said property to the same extent and in the same ratio as the children of his said brothers. Second party reserves the right to change his will from time to time but agrees that at all times during his lifetime he will have a will in existence leaving the same property as herein provided."

On June 3 deceased executed a will (hereafter referred to as the original will), the pertinent terms of which follow:

"SECOND: I give, devise and bequeath to my nephew CLINTON E. SMITH, my home property in the County of Contra Costa, State of California, consisting of approximately eighty acres of land planted to apricot and cherry orchard, together with all farm equipment on said property and all household furniture and effects thereon.

"THIRD: All other property of whatsoever kind and wheresoever situated of which I may die possessed I give, devise and bequeath in equal shares to my nephews RAY H. SMITH, EARL W. SMITH and FLOYD V. SMITH. I have in mind my other nephews ERNEST A. SMITH, LEONARD A. SMITH and HOWARD K. SMITH and have a deep affection for each of them. I leave them nothing by this will as I hope to give Ernest and Leonard some money from time to time during my life and I have full confidence that Ray will amply provide for Howard."

On September 1, 1948, deceased executed a codicil to this will, the body of which reads:

"The property left to Clinton E. Smith by said will, is so left and bequeathed to him to comply with the terms of a written agreement between Clinton and me and said bequest is subject to the provisions of said agreement that Clinton will bequeath said property as provided in said agreement.

"The property bequeathed to Ray H. Smith, Earl W. Smith and Floyd V. Smith, by said will, I now bequeath to said three nephews and to Ernest A. Smith, Leonard A. Smith and Howard K. Smith in equal shares, each of my said six nephews to receive one-sixth of said property.

"I reaffirm said foregoing will except as the same is hereby expressly changed."

All three documents were drawn by deceased's attorney. All three documents were admitted to probate as the will of deceased. (Since this case involves written instruments and no extrinsic evidence was introduced in the court below, this court is not bound by the trial court's interpretation of the documents, but may consider the question de novo. (*Estate of Platt* (1942) 21 Cal.2d 343 [131 P.2d 825].) However, as will appear, we agree with the trial court's determination.)

1. *The Estate Devised.*

It was stipulated that the original will, standing alone, would have devised the property to appellant in fee simple. Respondents contended that the agreement was made a part of the will by reference in the codicil and limited the devise to a life estate. Appellant contended otherwise. The court sustained respondents' contention.

In interpreting a will the primary question is the intention of the testatrix. (Prob. Code, § 101; *Estate of Brunet* (1949) 34 Cal.2d 105, 107 [207 P.2d 567, 11 A.L.R. 2d 1382]; *Estate of Emerson* (1947) 82 Cal.App.2d 510, 512 [186 P.2d 734].) Each case must be determined on its own particular facts. (*Estate of Bjors* (1951) 103 Cal.App.2d 361, 371 [229 P.2d 468].) An informal or unattested document may be incorporated by reference in a will, whether holographic or attested, "so long as the reference is unmistakable or with the aid of extrinsic proof can be made so." (*Estate of Smith* (1948) 31 Cal.2d 563, 567 [191 P.2d 413].) If the intent of the testatrix was to make the terms of the contract a part of the will, then there is proper incorporation. (*Estate of McCurdy* (1925) 197 Cal. 276 [240 P. 498];

*Estate of Wunderle* (1947) 30 Cal.2d 274 [181 P.2d 874];
53 Cal.Jur.2d § 71, p. 303.)

    Here the reference to the contract in the codicil is clear and definite and evidences the unmistakable intention of the testatrix that the contract is to be a part of her will and that the devise in the original will is subject to the terms of the contract. The contract provides, in effect, that appellant agrees to make a will leaving *all* of said property or the proceeds thereof as therein designated, and while appellant ''reserves the right to change his will from time to time,'' he nevertheless ''agrees that at all times during his lifetime he will have a will in existence leaving the same property as herein provided.'' In effect, appellant agrees to accept a life estate. The codicil positively states that the property is left to him ''to comply with the terms of a written agreement'' and ''is subject to the provisions of said agreement that Clinton will bequeath said property as provided in said agreement.''

    Whenever there is in a will a devise in qualified terms but followed by a direction for the devisee to leave the property to a third person, it creates a life estate in the devisee, with remainder over to the third person. (See *Estate of Briggs* (1921) 186 Cal. 351 [199 P. 322]; *Estate of Tooley* (1915) 170 Cal. 164, 167 [149 P. 574, Ann. Cas. 1917B 516].) Such is the situation here where the terms of the contract, being a part of the will, so provide.      Where the instrument as a whole provides a limitation over, a life estate may be created even if it is not expressly declared. (See *Estate of Smythe* (1955) 132 Cal.App.2d 343, 351-353 [282 P.2d 141].)

    Nor do the terms of the ''contract'' part of the will support the contention that the devise over to the remaindermen is simply ''what remains unexpended'' by appellant. The very inclusive scheme of disposition to be made by him of the property in which his issue shall share no more than the issue of his brothers, indicates that he is to have the property only for use during his lifetime, and while he may sell it (thereby not binding him to operate it for the period of his lifetime) the proceeds (other than his life estate in such proceeds) must go as directed by the testatrix.

    While it is true that the original will (considered alone) leaves the property to appellant in fee simple, it must be remembered that the only will which is effective is the one

existent on the date of the death of the testatrix. On that date the original will was no longer completely effective, because of the codicil which modified it. No question is raised, nor can one be, that testatrix did not have the right to modify the original will, as long as she did not violate her obligation under the contract to leave appellant a life estate. She was under no obligation to leave him a fee simple estate. Whatever her reason for appearing to leave appellant a fee simple estate in the original will, she certainly did not do so in the codicil. If deceased, when she made the original will, intended to leave appellant a greater interest than she had agreed to leave him, nevertheless she had the right at any time to change her mind and leave him only what she was obligated to leave him. On the other hand (and what is more likely), if inadvertently in making the original will she had given him a greater interest than she intended or obligated herself to do, she had the right to remedy that mistake.

## 2. *Trust.*

The property is distributed to appellant "as trustee for the benefit of all parties in interest, with the right to a life estate" therein. ■ A court has no power to create a testamentary trust unless such trust is required by a will. (See *Estate of Ogden* (1926) 78 Cal.App. 412, 414 [248 P. 680], and *McCloud* v. *Hewlett* (1902) 135 Cal. 361, 368 [67 P. 333].) ■ However, here we have a situation which constitutes more than a trust established by the court without foundation in the will. The trust results from the contract in which appellant agreed to make a will leaving the property as in the contract provided, and which contract is in effect incorporated in the will. In *Caldwell* v. *Rosenberg* (1941) 47 Cal.App.2d 143 [117 P.2d 366], the plaintiff and the defendant (brother and sister) entered into an agreement that as to the estate which they expected to inherit from their mother, if one of the parties should die prior to the death of the mother, one-half of the mother's estate would go to the children of the one who died, rather than all of the estate going to the survivor. Each agreed to carry out the provisions of the agreement. The defendant repudiated the agreement. The court held that the party surviving the mother should hold one-half of the trust property in trust for the heirs of the other predeceased heir.

In our case, appellant, in effect, has attempted to repudiate his agreement in contending that by the contract, will and

codicil he is entitled to a fee simple interest. In *O'Neil* v. *Ross* (1929) 98 Cal.App. 306 [277 P. 123], the husband made a will in which he provided that the property bequeathed to the wife remaining at the time of her death should be willed by her to certain relatives. The wife, at the bottom of the will, signed a statement to the effect that she would carry out the terms of the will. However, on her death, she left a will bequeathing the property other than as agreed. In an action against the wife's estate the court held that equity would enforce the agreement by decreeing that the intended beneficiaries designated by the husband were the equitable owners of the property of the wife's estate. Although the husband's will did not mention the word "trust" the court said (p. 327) : "The sole object of the court in exercising the power in trust which is contained in a will, is to carry out the intention of the testator."

*Notten* v. *Mensing* (1935) 3 Cal.2d 469 [45 P.2d 198], dealt with mutual wills of husband and wife and their oral agreement that upon the death of the survivor their property should go to certain relatives. After the death of the husband, the wife revoked her will and made other disposition of the property. In an action by the relatives designated in the mutual wills against the persons designated in the wife's will, the court held the latter to be trustees for the former, saying that where there is a valid agreement not to revoke a mutual will "equity will grant a sort of '*quasi*-specific performance' by making the parties who receive the estate constructive trustees for the intended beneficiaries under the revoked mutual will, in accordance with the terms of the contract." (P. 473.)

In *Sonnicksen* v. *Sonnicksen* (1941) 45 Cal.App.2d 46 [113 P.2d 495], husband and wife entered into an agreement to make wills providing that upon the death of the survivor their property would go to their children and the heirs of any deceased child. Concerning the contract the court said (p. 52) : "It was a contract made for the benefit of the surviving children of the contracting parties and thus one which they had the right to enforce. (Civ. Code, § 1559.) Hence, both husband and wife each became a trustee one for the other and both for the heirs named as beneficiaries in the contract. (Code Civ. Proc., § 369.)"

While all the above cases were suits in equity and not probate proceedings, we see no reason why the probate court

could not in a similar situation make a finding that the person who asks the probate court to distribute property to him free of the obligation of the agreement, holds the property in trust for the persons entitled to it under the agreement. It would be unreasonable to force respondents and the other nephews to bring another proceeding after the conclusion of the probate proceeding to establish the trust when the matter could finally be determined by the probate court.

In *Estate of Rath* (1937) 10 Cal.2d 399 [75 P.2d 509, 115 A.L.R. 836], an appeal from an order fixing inheritance taxes, the situation was similar to that in our case, except that there the agreement was between husband and wife instead of as here, aunt and nephew. Mr. and Mrs. Rath entered into a written agreement whereby Mrs. Rath agreed to will her separate property to Mr. Rath. He, in turn, agreed that he would make a will devising said property to his wife's nephews. Mrs. Rath executed a will in which she left the property to Mr. Rath in fee simple absolute (just as appellant claims Mrs. Smith's property was left to him). Mrs. Rath died, and Mr. Rath made a will leaving the property to the wife's nephews, as agreed. The controversy concerning the inheritance taxes was whether or not the will of Mrs. Rath and the contract "should be read 'as one document', with the result that under said will the husband received a life estate . . . with remainder to the wife's two nephews . . ." (Pp. 402-403.) In this interpretation the nephews would take as remaindermen under the wife's will. Different from the situation in our case, the court held that, as the contract was not referred to in the will, it did not become a part of the will. Nevertheless the court held (p. 404) that "the estate devised to the husband by the will of his wife was an absolute estate in fee simple. But said estate was subject to the charge of the valid contract, enforceable in equity . . ." that the husband should use the estate and that it should be devised by him to the wife's nephews. "Had he either died intestate or devised the property to other persons, such persons would have held the property as constructive trustees for said nephews, and could have been compelled in an equitable action to turn over the property to the nephews. [Citations.]" (P. 404.) Again, although this was an action in equity, it clearly appears that a constructive trust results from an agreement of the kind in our case. There appears no good reason why to avoid a multiplicity of suits the probate court may not so decree.

*Estate of Ogden, supra,* 78 Cal.App. 412, and *McCloud* v.

*Hewlett, supra,* 135 Cal. 361, holding that a court has no power to create a testamentary trust unless such trust is required by a will, are not relevant here for the reason that in those cases no contracts were incorporated in the wills. Here, because the contract was incorporated in the will, a trust is required.

██ "While the probate court has no general equity jurisdiction and its jurisdiction generally is confined to the settlement of the estates of deceased persons, it does have the power to apply equitable principles in aid of its functions as a probate court." (*Estate of Reade,* 31 Cal.2d 669, 672 [191 P.2d 745].) In settling the estate in question here the court is called upon to determine the proper construction of the will of the deceased which consists of the three documents, and to distribute the estate according to the intention of the testatrix. In *Guardianship of Wood* (1961) 193 Cal.App.2d 260 [14 Cal.Rptr. 147], we pointed out that in settling and surcharging the guardian's account, the probate court had the power "to determine 'all issues necessarily incidental thereto.'" (P. 267.) Here the trust determination is incidental to the distribution of the property of the deceased. In determining such distribution the court has the power to make an equitable distribution, which here means that the probate court may distribute the property in trust as required by the will.

The order is affirmed.

Tobriner, J., and Sullivan, J., concurred.

A petition for a rehearing was denied November 22, 1961, and appellants' petition for a hearing by the Supreme Court was denied December 20, 1961.