[Civ. No. 33436.   Second Dist., Div. Four.   June 17, 1969.]

Estate of BESSIE F. COOPER, Deceased.   HOUSTON I. FLOURNOY, as State Controller, Petitioner and Appellant, v. VIRGINIA BESS FOLEY, Objector and Respondent.

Joseph D. Lear, Myron Siedorf, Walter H. Miller, James F. Rogers and Mary Cardiff for Petitioner and Appellant.

Henry C. Rohr for Objector and Respondent.

DUNN, J.—This appeal, taken pursuant to Probate Code, section 1240, is from an order fixing inheritance tax in the estate. A recital of pertinent facts follows.

On March 18, 1955, Melle C. Cooper and his wife, Bessie F. Cooper, executed a "Joint and Mutual Will." The material terms thereof provided:

"Fourth: We give unto the survivor of us all and any real and personal property either owned by us jointly or severally for his or her own use and benefit forever.

"Fifth: Should Melle C. Cooper predecease me, then I, Bessie Frances Cooper do give, devise and bequeath all of my estate, real and personal, wherever situated of which I die possessed or over which I have the power of disposition or any interest whatsoever as follows:

\* \* \*

"Sixth: Should Bessie Frances Cooper predecease me, then I, Melle C. Cooper do give, devise and bequeath all of my estate, real and personal, wherever situated of which I die possessed or over which I have the power of disposition or any interest whatsoever, as follows:

\* \* \*

"Ninth: We, Melle C. Cooper and Bessie Frances Cooper, covenant each with the other to abide by each of our wills and by the joint and mutual will herein made, and covenant not to make any will or codicil different from this will after the death of either of us, and agree that this our last will and testament cannot be changed or varied by either without the consent in writing of the other."

In subparagraphs to Fifth and Sixth, Melle and Bessie

named the same beneficiaries to take on the death of the spouse surviving as between them.[1]

Melle Cooper died March 2, 1959, survived by his wife, Bessie. A Report of Inheritance Tax Appraiser was filed in the probate of his estate inventorying sizable assets, taxing the widow on a life estate therein and taxing the persons named in paragraphs FIFTH and SIXTH on the remainder. Under this finding, the widow's share was not taxed but the remainder interests were subject to a tax of $54,446.60. No formal objections to this report (Rev. & Tax. Code, § 14510) were filed, the report reciting that it was a compromise agreement entered into pursuant to Revenue and Taxation Code, section 14191 by the State Controller, the tax appraiser and the estate of Melle C. Cooper. The compromise was confirmed (Rev. & Tax. Code, § 14192) by court order on October 3, 1960.

On October 13, 1960, the court made its Order. Settling Final Account And For Distribution. That part of it here pertinent provided: ". . . and that in pursuance of and according to the provisions of the last will of said deceased, and by operation of law, the residue of cash, and the property hereinafter described, and all other property belonging to said estate . . . be and is hereby distributed to Bessie F. Cooper, widow of decedent."

Bessie Cooper died December 4, 1966, and a Report of Inheritance Tax Appraiser was filed wherein appellant, the State Controller, computed taxes as though Bessie owned the properties in fee and the persons interested took under her will as testamentary beneficiaries, and not as the remaindermen of a life estate.

Inheritance taxes were computed at $207,098.77. The executrix filed objections to the report on the ground Bessie Cooper had only a life estate in the assets and, after a hearing, the

---

[1]By each of these paragraphs: One-half was divided into five shares; one share was given each to Richard W. Moran, James D. Moran, Jean Claire Mathews and Virginia Bess Foley; one share was given to a bank in trust for the benefit of Alberta Hawk—these named persons being nieces and nephews of Bessie. The other one-half was divided into four shares; one share was given each to Adrian C. F. Hendriske, William K. Kuipers and Ida Hendriske Kuipers; one share was given in trust to a bank for the benefit of Rommert C. Cooper—these named persons being brothers, sister and nephew of Melle. Each paragraph provided in identical manner for alternate beneficiaries in the event a named beneficiary predeceased, or failed to survive distribution from the estate of the surviving spouse.

court agreed with the objector and made its Order Fixing Inheritance Taxes whereby it declared:

"3. That BESSIE F. COOPER, Deceased, had a life interest in the assets of the Estate of Melle C. Cooper, subject to a reasonable use by her for her own use and benefit.

"4. That the Controller of the State of California, in determining the tax in the estate of Melle C. Cooper, Deceased, taxed a life interest of BESSIE F. COOPER, Deceased, and taxed the remainder to the devisees: Alberta Hawk, Richard Moran, James D. Moran, Jean Claire Mathews, Virginia Bess Foley, Ida Hendrikse Kuipers, and C. F. Hendrikse." The order amended the appraiser's report to correspond therewith and reduced inheritance taxes to $23,010.14. It is from this order that the appeal is taken.

The controversy centers on the interpretation of the order made in Melle Cooper's estate distributing the property, appellant contending it gave Bessie a fee simple absolute. Appellant thus confesses to a belief that the inheritance tax in Melle Cooper's estate was computed on the wrong basis. In his brief he argues: ". . . the taxpayers waited until the inheritance tax in the Melle C. Cooper matter had become final before they obtained the decree of the Court that the entire estate vested in Bessie C. [sic] Cooper. Apparently they wish to have the best of all possible worlds. They wish to treat Bessie C. [sic] Cooper as having a life estate for inheritance tax purposes only, and not for any other purposes."

Respondent naturally enough disagrees, noting that appellant would have collected no tax at all in the estate of Melle C. Cooper if Bessie had taken the entire fee; this because of her widow's exemption. If Bessie had only a life estate, however, appellant could, as he did, collect a tax on the remaindermen's interests. If he is to be consistent, respondent argues, appellant should compute taxes on this same basis in Bessie Cooper's estate; but appellant now seeks to impose the tax as though Bessie had a fee simple absolute, thus substantially increasing the tax to be collected. Furthermore, the same persons taxed as remaindermen in Melle Cooper's estate are now sought to be taxed on the same property, but as devisees of Bessie Cooper in her estate proceedings.

Preliminarily, we note that no oral evidence was taken at the hearing on the objections. Respondent does raise, however, the effect of certain stipulated facts, namely, that the assets in Bessie Cooper's estate were identical to those in Melle Cooper's. From this we are asked to conclude that Bessie's con-

duct interpreted the distribution decree and indicates her belief that she only had a life estate in the properties, for which reason she conserved them for the benefit of the ultimate recipients.

,We face an apparent conflict between the order for distribution in Melle Cooper's estate and the order in the same probate affirming the inheritance tax compromise agreement. Thus, on the one hand Bessie Cooper appears to have received a fee simple absolute title and, on the other, to have a life estate, only. ■ In reviewing this conflict we note the rule that a plain and unambiguous direction for distribution necessarily constitutes a judicial construction of a will (Prob. Code, §§ 1020, 1021) and, when final, it cannot, under the doctrine of res judicata be impeached by the will, even if in direct conflict with it; and a decree of distribution is not subject to collateral attack no matter how erroneously it appears to depart from the devisory terms of the will; *Estate of Callnon* (1969) 70 Cal.2d 150 [74 Cal.Rptr. 250, 449 P.2d 186] ; *Miller* v. *Pitman* (1919) 180 Cal. 540, 543 [182 P. 50] ; *Woodring* v. *Basso* (1961) 195 Cal.App.2d 459, 467 [15 Cal.Rptr. 805] ; *Budny* v. *Bank of America* (1959) 167 Cal.App.2d 1, 2 [333 P.2d 812]. ■ But there are certain well-recognized exceptions to the rule. Thus : (1) where the decree is ambiguous, the will may be used to resolve the ambiguity (*Estate of Wallace* (1950) 98 Cal.App.2d 285, 288-289 [219 P.2d 910] ; *Bank of America* v. *Hennelly* (1951) 102 Cal.App.2d 750, 752-753 [228 P.2d 76] ; *Estate of Tynan* (1954) 129 Cal.App.2d 364, 366 [276 P.2d 809] ; *Estate of Miner* (1963) 214 Cal.App.2d 533, 538-539 [29 Cal.Rptr. 601] ; *Estate of Doyle* (1962) 202 Cal.App.2d 434, 440, 442, 444 [21 Cal.Rptr. 123] ) ; (2) where the decree, by its own terms, incorporates it the will may be looked to for varying purposes, such as : to supply matter omitted from the decree as well as also to clarify the decree's ambiguities (*Estate of Wallace, supra,* 98 Cal.App.2d at p. 289; *Estate of Lockhart* (1937) 21 Cal.App.2d 574, 578-579 [59 P.2d 1001] ; 29 Cal.L.Rev. 438, note, *Wills : Reference To Will To Clarify Terms of Decree of Distribution*).

At first review, one might conclude the order of distribution and the order regarding inheritance taxes in Melle Cooper's estate are in conflict. But reflection indicates this is not necessarily so. ■ Thus, distribution may be ordered only in accordance with the instrument that is testamentary. But the intent of the Inheritance Tax Law is that the tax be measured by beneficial succession; it is a succession tax levied on

the privilege of succeeding to the property. Accordingly, in fixing inheritance taxes the probate court need not consider merely the legal interests passing under the will. For example, in *Estate of Rath* (1937) 10 Cal.2d 399 [75 P.2d 509, 115 A.L.R. 836] Mr. and Mrs. Rath made a written agreement whereby the wife promised to will certain property to the husband if he survived her, he agreeing to leave such property to his wife's nephews on his own death. Mrs. Rath died first and her will left the property to her husband in fee simple absolute. No inheritance tax was levied upon the nephews. When Mr. Rath died, his will devised the property to the nephews, as agreed. In the probate of his estate, inheritance taxes were fixed on the nephews as being devisees under his will. They appealed, contending Mr. Rath had only a life estate and that they took as remaindermen under the wife's will (thus effecting a tax saving[2]). The court held that because of the separate written agreement Mr. Rath was trustee for his wife's nephews, having legal title but in equity having only a life estate. So concluding, the court found that the appealing nephews should have been taxed in Mrs. Rath's probate as remaindermen of the life estate, and not as devisees of the fee under Mr. Rath's will.

While *Rath* is not on all fours with the present case, it does illustrate a distinction between the effect of a decree of distribution and the taxation of interests so distributed. In our case, as no separate instrument was executed there was nothing dehors the will for the probate court to consider in determining succession and fixing inheritance taxes. From the orders made, it is apparent that the court probating the Melle Cooper estate concluded that present respondents were beneficially interested in the property for tax purposes, but that Bessie Cooper was entitled to receive distribution of the legal title.

It is true that the order made in Melle Cooper's estate would appear to transfer full and absolute title to Bessie Cooper but the order has a chimeric quality. Thus, while it says the property ". . . is hereby distributed to Bessie F. Cooper, widow of decedent . . .", it also states that such is done ". . . in pursuance of and according to the provisions of the last will of said deceased . . .". Unless this latter phrase is

---

[2]If this position be correct, then the inheritance taxes should have been charged against their interests during probate of Mrs. Rath's estate. Recognizing this, appellants stated they had no intention of escaping the tax and advised the appellate court of their willingness to pay it.

to be held meaningless its intended significance must be to incorporate the will by reference thereto. In *Estate of Lockhart, supra,* 21 Cal.App.2d at p. 576, the will was admitted into evidence to explain and amplify the decree of distribution. The decree stated that it ". . . distributed *'in pursuance of and according to the provisions of the last will of said decedent'* . . .". On appeal it was contended the will was improperly admitted into evidence. In rejecting this contention the court stated (pp. 578-579) : "[2] The court may, by express terms or by apt reference thereto, incorporate the will in the decree so as to constitute it a portion of its distributive terms and make it a part of the decree as effectually as though set forth in it. When necessity arises thereafter to construe the decree, it is the duty of the court to look to the will to ascertain the terms of distribution. (*Horton* v. *Winbigler,* 175 Cal. 149 [165 P. 423].) If the will, by apt reference, is made a part of the decree, it supplies matters which it contains but the decree omits. (*Estate of Blake,* 157 Cal. 448 [108 P. 287].) [3] While the will cannot·be used to impeach the decree, it can be used to explain it where the decree taken alone is uncertain, vague and ambiguous. . . . [4] The decree does not appear to be uncertain or ambiguous in respect to each child's ultimate share, for it clearly provides that each child shall receive as a conditional legacy, one-sixth of the principal of the trust estate, and as a residuary legacy one-third of the property then in trust, at the termination of the trust. But the decree does omit the provision of the will that each child was to receive ultimately one-third of the entire trust estate. Phrases identically worded to the above italicized portion of the present decree have been held to incorporate the will into the decree. (*Horton* v. *Winbigler, supra; In re Ewer's Will, supra* [177 Cal. 660 (171 P. 683).) [5] The will, therefore, was properly admitted, and the judgment in so far as it distributed one-third of the entire estate to the asignees is correct." Also see: *In re Lewis* (1969) 271 Cal.App.2d 371 [76 Cal.Rptr. 289]. The phrase "in pursuance of and according to the provisions of the last will of said decedent" is identical (excepting use of the word "decedent" rather than "deceased") with the phrase employed by the court in distributing Melle Cooper's estate. It is probably true that the better, and certainly the more customary, practice is to have the order of distribution recite in *haec verba* those provisions of the will deemed pertinent by the probate court or to incorporate provisions into the order by more specific reference.

Such practice tends to eliminate the problems here encountered. Nevertheless, the language used by the court in its decree in the Melle Cooper estate authorized the court in probate of Bessie Cooper's estate to look not only to the order of distribution but also to the will of Melle Cooper to the extent that ". . . it supplies matters which it contains but the decree omits." (*Estate of Lockhart, supra,* 21 Cal.App.2d at page 579.)

Under the foregoing reasoning we look to the Joint and Mutual Will and particularly to those provisions of it already quoted. Under paragraph FOURTH Melle Cooper left all property to his wife ". . . for . . . her own use and benefit forever." This language cannot stand alone, however, and must be read in conjunction with paragraphs FIFTH, SIXTH and NINTH. The ninth paragraph made provisions of the will irrevocable after death of either spouse. By the fifth and sixth paragraphs each spouse promised that whichever survived would leave all property ". . . of which I die possessed or over which I have the power of disposition . . ." to specified beneficiaries.

Taken as a whole, the will establishes a life estate in the surviving spouse. By paragraph FOURTH, each spouse devised the property to the survivor "for his or her own use and benefit." This language empowered the survivor to consume part, or even all, of the principal limited to his or her *own* use and benefit. "[6] A life estate with power to use and consume part or all of the principal for specified purposes and a limitation over of the remainder on termination of the life estate has long been recognized in this state. . . . Such power of absolute disposition, annexed to a life estate, does not enlarge that estate into an estate in fee." *Estate of Smythe* (1955) 132 Cal.App.2d 343, 346 [282 P.2d 141]. In a lengthy analysis of the problem, the same court stated (p. 351) : "[9] Where a bequest or devise is made in ordinary language, without words of inheritance or perpetuity, but in terms standing alone to carry the absolute or fee interest, and followed by a limitation over of the property not disposed of by the first taker, the first taker takes a life estate only with power of disposal." And further (p. 351) : "[10] A power to will property to certain specifically named persons is special or particular and not general or discretionary. . . . [11] The power with respect to the remainder is coupled with a mandatory duty to exercise it. . . . [12] A special and mandatory power is obligatory on the donee and is raised in

equity as a trust or a power in trust, and the execution of that power may be enforced in equity in the same way as a trust.''

It is true that the joint and mutual will in our case does not use the term ''life estate'', but this omission is hardly fatal. Thus, it has been said (*Estate of Smith* (1961) 196 Cal. App.2d 544 at page 549 [16 Cal.Rptr. 681]) : '' [4] Whenever there is in a will a devise in qualified terms but followed by a direction for the devisee to leave the property to a third person, it creates a life estate in the devisee, with remainder over to the third person. . . . [5] Where the instrument as a whole provides a limitation over, a life estate may be created even if it is not expressly declared.''

Reviewing the language of the will it is clear enough that if during her lifetime Bessie Cooper had attempted to transfer the property, by new will or otherwise, to third persons in violation of the intention of the will she could have been enjoined from so doing by respondents herein, as the intended beneficiaries. '' [4] It is well settled that a person may contract to make a particular disposition of his property by will, and in case of a breach the promisee has several available remedies. He may bring an action at law for damages. . . . Equitable relief in the form of 'quasi specific performance' of the contract may be obtained where the remedy at law is inadequate and the promisor has failed to make the promised disposition of his will. . . . It has also been recognized that the promisees of such a contract need not wait until the death of the promisor but may seek equitable relief against *inter vivos* conveyances made by him in fraud of their rights. . . . [5] The right to enforce such a contract to make a particular disposition of property on death is not restricted to the promisee. Where two parties agree to make mutual wills, each promising to dispose of his property to the other or, if the other be dead, to certain third persons, and one of the parties performs by leaving his property to the other, the intended devisees and legatees are entitled to enforce their rights as beneficiaries under the agreement.'' (*Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 563-564 [212 P.2d 878].)

The fact that paragraph FOURTH entitles the surviving spouse to use the property ''for his or her own use and benefit forever'' does not, taken in context with the remaining testamentary provisions, dispel the parties' intention to establish a life estate. A similar problem was considered in

*Brewer* v. *Simpson* (1960) 53 Cal.2d 567 [2 Cal.Rptr. 609, 349 P.2d 289] and the court stated (p. 589): " '. . . [14] Where the parties contract to make a particular disposition of property by will, the agreement necessarily includes a promise not to breach the contract by revoking the will and failing to dispose of the property as agreed.' . . . [15] Also implied as part of the 'good faith and fair dealing' is a covenant of the survivor not to make unreasonable use of the property, as by conveying it all away so that the named third party beneficiaries will receive nothing.''

We have hereinbefore concluded that the superior court, sitting in probate of Bessie Cooper's will, properly fixed the inheritance tax on respondents as being remaindermen of a life estate in Bessie Cooper established under the will of Melle Cooper. The orders made in probate of the estate of Melle Cooper are final, no appeals having been taken from them. However, the effect and intention of those orders is before us insofar as they affect the present appeal. In this context, we have concluded that the orders made in Melle Cooper's estate were not self-conflicting and were proper and that Bessie Cooper thereby received a life estate. The order from which appeal is taken in the present action also was proper.

In the light of this conclusion it is unnecessary for us to consider a second point raised by respondents, namely, that the doctrines of res judicata and collateral estoppel operate to defeat appellant's claims.

The order appealed from is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 13, 1969.